# Louisville Trust Company, Administrator, Etc. v. Horn, Etc.

(Decided June 19, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Negligence—Duty Essential.—An essential element of actionable negligence is existence of some duty, which party charged owes to one who suffers by that negligence or violation of that duty.

2. Negligence—Railroad Station Platform, on Which Boys Accustomed to Skate, Not Attractive Nuisance.—Railroad station platform, built in usual and ordinary fashion of material universally recognized as suitable and appropriate for purpose, and on which young boys were accustomed to skate, held not an attractive nuisance.

3. Negligence—Boys Skating on Railroad Station Platform Not Licensees or Invitees—Boys who were accusomed to skate on railroad station platform, and where chased away and admonished whenever company employes saw them, held not licensees or invitees.

4. Negligence—Patrons of Railroad Depot Not Charged with Same Duty Toward Licensees as Company.—Even if young boys accustomed to skate on railroad station platform were to be held licensees of company, patrons of depot would not necessarily owe them the same duties as company.

5. Negligence—Driver Backing Wagon at Depot Held Not Under Duty to Look for Trespassers.—Where driver of wagon delivering tobacco to depot was backing up to platform without seeing boy, who was attempting to climb up on platform in order to skate, and was injured, driver held not to have duty to get out of wagon in order to determine that no trespasser was liable to be hurt.

6. Negligence—Invitee's Duty to Licensee no Greater Than Duty of Owner of Premises.—Only duty owed by railroad to licensee or trespasser is to refrain from injuring him after his situation is discovered, and an invitee of railroad would have no greater duty toward such licensee than railroad.

7. Appeal and Error—Ruling of Trial Court Not Disturbed on Appeal, if it Can be Supported on Any Reason.—Ruling of trial court will not be disturbed on appeal, if it can be sustained for any reason, irrespective of reason to which trial court assigned the ruling.

T. A. LUMAN for appellant.

MERIT O'NEAL and O'NEAL & O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and defendant below, J. H. Horn, was operating a transfer business in the assumed name of The Horn Transfer Line and on December 7, 1922, he had an employe as the driver of one of his transfer wagons which was drawn by a horse or mule team who was on that day delivering tobacco prized in hogsheads to the freight depot of the Baltimore & Ohio Railroad Company located at the corner of 15th and Rowan streets in the city of Louisville. There was built in connection with the depot a large platform some four feet above the

surface of the ground and it extended to within about eighteen feet of the walk on the side of Rowan street. Between that walk and the platform the railroad company had constructed a concrete surface on a level with the walk. The driver of defendant's truck or wagon backed across the walk on Rowan street and from thence to the platform for the purpose of unloading his four hogsheads of tobacco. Richard B. Cutsinger, a lad nine years old, with some other boys whose ages ranged from seven to fourteen years, had started to get upon the concrete platform of the depot for the purpose of skating thereon and Cutsinger attempted to mount the platform from the concrete surface immediately behind the wagon or truck, as it was backing, and it caught one of his legs between the side of the platform and the rear of the wagon and besides mashing it considerably, dislocated his hip joint. He was carried to a hospital and some four hours later was operated on for the purpose of reducing the dislocation, all of which was successfully done and his hip put in a plaster casing. The surgeons were waiting for the plaster to harden for the patient to be moved, but he had not entirely recovered from the effects of the anaesthetic, and about the time they were contemplating removing him from the operating table he belched and appeared to have something in his mouth when it was discovered there were some beans therein, an abundant amount of which he had eaten for lunch just before being hurt, and they were only partially cooked and wholly unmasticated. It was discovered that he was laboring for breath and everything was done to relieve him but he shortly died. A post-mortem examination revealed the fact that he had nine unmasticated beans in his larynx or windpipe, which all the medical testimony in the case proved was the direct cause of his death, and the same testimony also proved that the death was not the proximate result of his injuries.

The Louisville Trust Company qualified as decedent's administrator and afterwards brought this action against defendant to recover damages for his death upon the ground that defendant's servant had negligently backed the wagon or truck at the time the injuries to the decedent were sustained. The answer denied all the material averments of the petition, including that of the death being the proximate result of the injuries, and also contained a plea of contributory negligence, which the reply denied and upon a trial before a jury the court,

at the close of plaintiff's testimony, peremptorily instructed it to return a verdict for defendant. Plaintiff's motion for a new trial was overruled and from the judgment dismissing the petition it prosecutes this appeal.

Defendant's counsel urge two grounds in support of the peremptory instruction which are: (1) That there was no actionable negligence proven, and (2) that if there had been the death of the decedent was not the proximate result of the injuries he received, and it appears that it was upon the latter ground that the court sustained the motion for a directed verdict. Whether we agree with that conclusion of the trial court is unnecessary to be determined, if the evidence introduced by plaintiff failed to establish negligence and thereby authorized the directed verdict under ground (1) which question we will first discuss and determine.

It is universally held that an essential element in the creation of actionable negligence is the existence of some duty which the party charged owed to the one who suffered by the negligence and a violation of that duty to his damage and detriment. In an effort to show a duty which defendant through its employed servant in delivering the freight on the railroad platform owed decedent, it is attempted to be proven that he and his companions had theretofore been skating on the depot platform, and the inference is sought to be drawn that they thereby obtained some sort of license or invitee privilege, which the patrons of the depot were bound to respect, and that unless such patrons took cognizance of such rights and governed their actions accordingly they would be liable to any of the boys, including the decedent, who might sustain injuries thereby.

The theory is rather far fetched and necessarily proceeds upon the idea that the patrons of the depot, as well as its owner, occupied the same relationship towards decedent and his youthful companions and that the concrete platform was a sort of attractive nuisance and the railroad company, as well as its patrons, owed the boys a duty to maintain a lookout for them and to use the premises in the discharge of their business in such a way as not to inflict injury. We, however, do not agree with any such theory. In the first place, not even the railroad company could, under the facts, be charged with maintaining an attractive nuisance in so constructing its depot. It was built in the usual and ordinary

fashion and constructed of material universally recognized as suitable and appropriate for the purpose. It possessed none of the elements of an attractive nuisance as recognized in the law; but, if otherwise, the proof is uncontradicted that every time the deceased and his companions appeared upon the platform to skate thereon some employe of the company would run them away and firmly admonish them to desist in such use and not to return. The companions of the deceased, who testified in the case, each and every one of them showed that they were watchful in order to find an opportunity when no employe of the railroad company was on guard. But even if that feature had been absent and the facts were such as to charge the railroad company, who maintained the depot, it does not necessarily follow that the patrons of the depot would likewise be so charged.

Independently, however, of any of the foregoing facts there is no proof that defendant's driver on the occasion in question was himself familiar with the use of the platform by decedent and his companions. It is true one or two of them said they had seen him about the depot before, but they each testified to no fact that he saw them there on the occasion of the accident. On the contrary, they testified that so far as they knew he did not see them and did not know that decedent went or was behind his backing wagon, and they also said that the decedent went behind it after it started to back from the sidewalk on the street. The driver was necessarily behind the four hogsheads of tobacco and could not see anyone behind his wagon and, surely, it cannot be contended that it was his duty to get out of the wagon and go behind it for the purpose of seeing whether or not a trespasser was liable to be injured.

The general doctrine concerning the rights of licensees (even if we should consider decedent a licensee) was discussed and stated in the very recent case of Louisville & Nashville Railroad Co. v. Page, 203 Ky. 755, wherein it is stated, "It is well settled that a licensee or trespasser takes the premises as he finds them, and that the owner is only liable to him for injuries resulting from positive acts of negligence," etc. So that, as hereinbefore stated, it would seem to follow that if this action had been brought against the railroad company it could not be sustained upon the ground that decedent was a licensee, since the only duty owed to such one is to refrain from injuring him after his situation is discovered, and

*a fortiori* would the same doctrine apply to an actual invitee, as was defendant's servant at the time, in using the premises for the purposes for which they were maintained.

The case is altogether unlike that of Tupman's Admr. v. Schmidt, 200 Ky. 88, wherein a truck driver on the public streets backed it over a six year old child resulting in its death. In the first place, in that case the child was in a public street where it had a right to be; and in the second place, the driver had not only seen it immediately at the rear of the truck a short while before but had removed it from that place as well as its little wagon which it was endeavoring to fasten on to the truck. At the time he got ready to back he observed that the child was not on the pavement where he had put it a few moments before and without examining the rear of the truck he backed it, with the fatal consequences. It was there held that it was an issuable fact to be submitted to the jury as to whether the driver was negligent under the circumstances. The facts in this case are far removed from those in that one and there is no semblance of analogy between them.

It is the well settled practice in this court that if there exists any reason in the record for sustaining a particular ruling of the trial court it will not be disturbed on appeal, although a different reason was assigned for it by the trial court and, since the peremptory instruction in this case was authorized for the reasons hereinbefore stated, the giving of it will be upheld, although it was done upon a different ground and which renders it unnecessary for us to either discuss or determine the sufficiency of that ground.

Wherefore, the judgment is affirmed.