**Willie BIBBS, Appellant,**

**v.**

**KENTUCKY & INDIANA TERMINAL RAILROAD et al., Appellees.**

Court of Appeals of Kentucky.

March 22, 1957.

**230**

Theodore Wurmser, Louisville, for appellant.

Louis Seelbach, Gerald Kirven, Louisville, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, of counsel, for appellees.

STEWART, Judge.

This is a tort action for damages in the aggregate sum of $6,370 resulting from a collision at a railroad crossing between an automobile driven by one of the original plaintiffs, James E. Robinson, in which the other plaintiff, Willie Bibbs, was a passenger, and a diesel switch engine owned by defendant, Kentucky & Indiana Terminal Railroad, operated by their employee and the other defendant, Charles J. Wommer. The defendants by answer denied any negligence on their part and pleaded contributory negligence on the part of each of the plaintiffs. At the close of the plaintiffs' evidence, the trial judge peremptorily instructed the jury to return a verdict in favor of each of the defendants on the ground that each of the plaintiffs was contributorily negligent. Thereafter a judgment was entered upon the directed verdict. From that judgment only the plaintiff, Bibbs, the passenger in the automobile, has appealed. We shall refer to the parties as "the defendants" and "Bibbs".

On the night of July 24, 1955, Robinson, with Bibbs as a guest, was driving his automobile eastwardly on Ormsby Avenue in Louisville. As he approached the intersection of what would be 14th Street but where, instead, three tracks of the Illinois Central Railroad cross Ormsby Avenue in a north-south direction, Robinson claimed he brought his automobile to a stop, looked both ways, and then proceeded slowly across the first two tracks. Upon reaching the most easterly of the three tracks, Robinson's automobile ran into the above engine with no railroad cars attached, which was backing in a southerly direction. Bibbs testified Robinson stopped and looked to the right and left before he started his automobile across the tracks. Bibbs also stated he never saw the engine until just before the accident occurred. As one approaches the railroad tracks from the west there is a brick building near the first rail of the west track, which has an icing platform extending from it over head across Ormsby Avenue.

These uncontroverted facts were established by the defendants: The engine was moving at ten to twelve miles per hour. The bell was ringing and the engine was rattling. The engine had a backup light, the beam of which was regulated up high and which shone for 75 feet. It also had two lights on each side, a headlight, which was on dim, and a blue light on top of the engine. All these lights were on. In addition to the lights, the engine was painted with contrasting colors and had a fluorescent amber stripe all around it. This stripe will become luminous when the light of an automobile's headlight is shone on it. The distance from the nearest rail which the automobile crossed to the track where the collision occurred is about 30 feet. The measurement from the place where Bibbs says the car came practically to a full stop to the closest rail of the track on which the engine was moving is over 40 feet.

Charles J. Wommer, the engineer, testified he was almost at the north edge of Ormsby Avenue and was entering the crossing when he first realized the automobile in which Bibbs was riding was not going to stop. He set his brakes in emergency and, according to him, there was nothing else he could do to avoid the accident. He was able to stop his engine before it cleared Ormsby Avenue. Robinson testified, "The train * * * hit me * * * right in the front," but all the other evidence introduced, including other parts of Robinson's own testimony, and the physical facts, are to the effect that the automobile hit the engine. Robinson introduced a repair estimate in proof of his car damage and this shows that all the damage was to its front. Wommer also stated the automobile hit the engine at the rerailer which hangs on two

hooks on the side of the engine between the rear trucks and the air reservoir tank. The rerailer is about 15 feet from the rear end of the engine. Three train crew members who were on the engine at the time testified that the automobile struck the side of the engine. Paul McHugh of the Louisville Police Department made an investigation of the accident before the vehicles were moved. He testified the driver admitted that he had failed to stop for the crossing. McHugh found the automobile had damage to its front and the diesel engine had damage to its side.

We conclude the ruling of the lower court that Bibbs was guilty of contributory negligence is not justified by the evidence. However, it is immaterial if the trial court was wrong in assigning this ground for directing a verdict in favor of the defendants if any other reasons exist in the record to sustain the lower court's ruling. Louisville Trust Company v. Horn, 209 Ky. 827, 273 S.W. 549. We believe there are other grounds upon which the lower court could have based its ruling for dismissing Bibbs' complaint. These are that Bibbs failed to prove the defendants were guilty of any negligence on the occasion, and that Bibbs' injuries were the sole result of Robinson's negligence in driving into the side of the engine.

Counsel for Bibbs argues that this was a blind crossing, due to the location so near the track of the brick building on the northwest corner with the overhead icing platform extending from it across Ormsby Avenue, and he maintains that under such circumstances there should have been flashing signals installed at the crossing. This counsel also points out that there were several trainmen around at the time of the accident, most of whom were riding on the engine, and that it would have been a simple matter to have sent one of them ahead to the crossing with a lantern to warn motorists of the engine's approach.

Bibbs failed to raise the issue of dangerous crossing by any allegation and particularly omitted to present any proof on the point in the lower court. This fact alone would prevent his reliance upon this ground in this appeal. It is elementary that any basis for relief that is neither pleaded nor proven in the lower court cannot be considered for the first time by this Court. It will be shown hereinafter that if one stops his automobile before entering upon the railroad tracks, which is required to be done by an ordinance of the City of Louisville, he would have an unobstructed view of any train approaching from the north. The railroad was not under any duty to provide a flagman or any kind of signal lights at this crossing. Its burden was to provide a standard sign reading "railroad crossing" in letters at least 5 inches high, as KRS 277.160 requires, and it fully complied with the law in this respect. We are unable to conceive what precaution this defendant could have taken to have prevented the accident under the circumstances. This brings us to a consideration of the second defense interposed as a bar to Bibbs' claim, namely, his injuries were caused solely by Robinson's negligence.

It is our view there is no real dispute in the evidence that the automobile collided with the side of the engine at the rerailer, or at a distance of about 15 feet from the rear of the engine. The only scintilla of proof that the engine struck the automobile was Robinson's testimony that "the train * * * hit me * * * right in the front." This claim that the engine hit the automobile was utterly refuted by other evidence presented by Robinson himself, which points unerringly to the fact that he ran into the side of the engine because all the damage sustained by his automobile was to its front. As has been mentioned, his repair estimate and his "Exhibit 5", which is a picture of the automobile taken after the accident, indicate that the damage occasioned by the collision was to the front of his automobile. The engineer also testified the engine was on the crossing before he realized the plaintiffs were in imminent

peril, and this evidence must be accepted for its full worth because it was never refuted. It would be apparent, too, that once the moving engine was on the crossing, its massive size and noise would themselves be a terrifying warning of danger to a careless driver.

If it be assumed Robinson came to a full halt under the icing platform, and the weight of the evidence seems to emphasize that he did not, he was then 40 feet away from the engine and it is obvious that there was no obstruction which could have prevented his seeing the engine's backup light or its side lights. The automobile could not have been traveling very fast, if it started from a complete stop, by the time it traveled across the west track and the middle track to the point where it ran into the engine. Defendants' "Exhibit 8" makes it clear that from the moment the automobile reached the most westerly rail (and still had some 30 feet to travel to the point of impact with the engine) Robinson had absolutely unobscured vision to the north or to his left, which was the direction from which the engine was coming.

In view of the foregoing summary of the evidence no reasonable person could conclude other than that the proximate cause of the accident was that Robinson ran into the engine while it was on the street crossing. We believe the reason for this was unquestionably his failure to maintain a proper lookout and more than likely his neglect to stop before entering upon the railroad tracks. We have many times written that when a train or any part of it is actually occupying the crossing, this in itself is an effective and adequate warning to a traveler on the highway, and the latter, although injured, will not be permitted to claim he had no notice of the train's presence because any other warnings were not given. See Louisville & N. R. Co. v. Branson, Ky., 267 S.W.2d 945, and the cases cited therein on this point. It follows the directed verdict was justified.

Wherefore, the judgment is affirmed.