## HARRY B. WALTER, INFANT, *vs.* THE BALTIMORE ELECTRIC COMPANY ET AL.

*Fall of Electric Wire in Street Prima Facie Evidence of Negligence.*

The fact that a wire of an electric lighting company, strung over a public street of a city, falls upon, and injures, a person passing along the street, is itself sufficient *prima facie* evidence of negligence on the part of the company and casts upon it the burden of overcoming that presumption.

*Decided January 13th, 1909.*

Appeal from the Superior Court of Baltimore City (HARLAN, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Thomas G. Hayes* and *Charles F. Stein,* for the appellant.

The single question presented by this appeal is, whether or not, when a pedestrian, lawfully upon a public street, and using due and ordinary care, is injured by contact with a broken wire hanging down in such street, charged with a high and dangerous current of electricity, the person or corporation who owns, controls and maintains said wire is, solely upon these facts, in the absence of *explanation, prima facie* guilty of negligence toward the injured person, and whether or not upon the proof of the above facts does the maxim of *res ipsa loquitur apply,* and is the plaintiff entitled to go to the jury on the question of negligence *vel non* of such owner on singly and solely the proof of the above facts?   The learned

lower Court ruled that the plaintiff was not entitled to go to the jury on the proof of the aforesaid facts, as such facts alone were no proof of negligence, and instructed the jury to find for the defendant, because the plaintiff had failed to show any negligence on the part of the defendant, the Consolidated Gas Electric Light and Power Company. The contention of the appellant was that these bare facts alone, in the absence of any *explanation* on the part of the defendant owner of how the wire happened to be hanging down in the street, how long it had been so hanging down, etc., entitled the plaintiff to recover; or, in other words, that to the accident and the physical facts connected with the accident, the maxim of *res ipsa loquitur* applied. All the authorities, including this Court, so hold, as follows:

1. Every text writer states the case to be that injury to a person lawfully on a public street, using due and ordinary care, by a high tension wire of an electric company hanging down in the street as an obstruction, is on this single showing, in the absence of explanation, *prima facie liable* to the injured person for its negligence. *Jaggard on Torts,* p. 864; *Croswell on Electricity,* sec. 249; *Keasbey on Electric Wires,* sec. 243; *Joyce on Electric Law,* sec. 606; 2 *Cooley on Torts,* 3 Ed., p. 1, 426; *Elliott, Roads and Streets,* sec. 826; 1 *Thompson on Negliigence,* sec. 812; 1 *Shear. and Redf., Neg.,* sec. 6; 10 *A. & E. Ency. Law,* 874; 15 *Cyc.* 477, 478.

"It may be doubted whether persons or corporations employing for their own private advantage so dangerous an agency as electricity ought not to be regarded as *quasi insurers* as toward third persons against any injurious consequences which flow from it." *Thompson on Electricity,* sec. 65.

2. The Supreme Courts of the States, with perhaps one or two exceptions, have held that a person on a public street injured by a sagging or hanging wire charged with a high tension of electricity has a *prima facie* case of negligence against the owner of the wire, if *unexplained. Hebert* v. *Lake Chas. Co.,* 111 La. 522, 64 L. R. A. 101; *Boyd* v. *Portland Elec. Co.,* 40 Or. 126, 57 L. R. A. 632; *Snyder* v. *Wheeling Elec.*

*Co.,* 43 W. Va. 661, 39 L. R. A. 499; *Denver Elec. Co.* v. *Simpson,* 21 Colo. 371, 31 L. R. A. 566; *Gannon* v. *Laclede Co.,* 145 Mo. 502, 43 L. R. A. 505; *Newark Elec. Co.,* 69 N. J. L. 505, 57 L. R. A. 624. The Oregon case of *Boyd* v. *Portland Elec. Co., supra,* thus states this principle of law: "Electricity is a dangerous element, and those who make merchandise of it are legally bound to exercise that degree of care that will render its use reasonably safe; and as the wires which convey it cannot safely be permitted within reach of travelers, *a presumption arises when they are found out of their proper place that those having them in charge have been negligent. The Courts quite universally hold that proof that a live wire was down in a street and injury resulted therefrom is prima facie evidence of negligence.*"

3. There is but a single Federal Court which has passed on this exact question. In speaking of a broken wire hanging in a street, this Court said: "It was a fair question for the jury to decide *whether the defendant had not failed in its duty to the public* by allowing its wire to get into such a condition that it would easily break and in breaking would be likely to fall across the electric light wire, and become dangerously charged. *It was not incumbent on the plaintiff to prove more under this head.*" *W. U. Tel. Co.* v. *Thorn,* 12 C. C. A. 109, 64 Fed. Rep. 287.

4. There are a number of cases of other State Supreme Courts in which it has been expressly and directly decided that injury to a person on a public street by a live wire of an electric company creates a presumption of negligence on the part of the owner, controller and maintainer of the wire, and the decisions of these Courts have been cited with approval by this Court in the case of *W. U. Tel. Co.* v. *Nelson, infra.* These cases are the following: *Haynes* v. *Raleigh Gas Co.,* 114 N. C. 203, 19 S. E. 345; *S. W. T. & T. Co.* v. *Robinson,* 1 C. C. A. 684, 50 Fed. Rep. 810; *Uggla* v. *West End S. Ry.,* 160 Mass. 352.

In *Haynes* v. *Raleigh Gas Co., supra,* there is this expression of the rule: "Proof that the *death-carrying wire* was put

·above the street by the defendant and was its property and under its management and control of its servants, and that by contact with the wire the deceased, having a right to be in the street, was killed, a complete *prima facie* case of negligence was made out. * * * The plaintiff should have been allowed to say to the defendant: *'The wire you put in the street killed my son while passing along the highway, as he had a right to do. If you are not in default, show it and escape responsibility."*

5. This Court, by a clear and strong opinion, has decided this exact question of law, in *W. U. Tel Co.* v. *Nelson*, 82 Md. 311, which has become a leading case. The Supreme Courts of five States have cited, approved and followed this Maryland case on this exact point, as to the presumption of negligence from an injury to a person on a street, from a live electric wire. This law is stated as follows: "It follows from this that if the property of the defendants was not in proper condition, and by reason thereof Nelson was injured, *these facts alone, in the absence of the evidence to show the defect originated without the fault of the companies, afforded a prima facie presumption of negligence. In such a case the doctrine of res ipsa loquitur fairly applies."*

6. The same law of presumption of negligence has been applied in this and other Courts to accidents to persons on public streets and other places. Some of these many cases are the following: *Murray* v. *McShane*, 52 Md. 217; *Treusch* v. *Kamke*, 63 Md. 281; *Howser* v. *C. & P. R. Co.*, 80 Md. 146; *Decola* v. *Cowan*, 102 Md. 551; *Strasburger* v. *Vogel*, 103 Md. 85; *Byrne* v. *Boadle*, 2 H. & C. 722; *Scott* v. *London Dock Co.*, 3 H. & C. 596; *Kearney* v. *London R. Co.*, L. R. 5 Q. B. 411; *Cummings* v. *Nat. F. Co.*, 60 Wis. 603; *Mullen* v. *St. Johns*, 57 N. Y. 567.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the Baltimore Electric Co. and the Consolidated Gas, etc., Co., appellees.

The infant plaintiff, a boy eight years old at the time of

the trial, and seven years old at the time of the accident, was put on the stand and testified that on the day of the accident he went from his house on Harford Avenue to a store a short distance therefrom, and that on his way home he was swinging around a certain telegraph pole, when a wire fell and struck him on the head, or swung around his head. He endeavored to push it off with his left hand, but got caught in it and was thrown into the street. At the time of the accident he was alone. He had passed the telegraph pole in question only a few minutes before on his way to the store. He testified on cross-examination that there was no wire down at that time, but, on re-direct examination said he did not know whether it was down at that time, or not.

Minnie Knox, a colored woman, who was passing along Harford Avenue at the time in question, testified that she was near the boy and saw him fall out in the street. She looked to see what was the matter and found he was struck with a wire. She called for help. Other witnesses testified to seeing the boy lying in the street in contact with the wire, immediately after the accident. A Mrs. Welsh identifies the wire as the middle wire on the house side of the second long cross-arm from the bottom of a pole, which pole was the second pole south of North Avenue, on the west side of the street. It was admitted that Harford Avenue is a public highway, and that the wire referred to by the witness, Mrs. Welsh, was at the time of the accident, a wire owned and controlled by the defendant, the Consolidated Gas Electric Light and Power Company. This is practically the whole case as proved by the plaintiff.

There is absolutely no evidence to show when the wire broke. The inference, as far as we can draw any inference from the testimony, seems to be that it must have broken just at the moment of the accident. There is absolutely no evidence to show what caused the wire to break. There is no evidence to show any defective condition of the wire previous to the accident, or at the moment of the accident, and there is no evidence to show that the wire had been hanging over the

street prior to the moment of the accident, or that there had been any dangerous condition of any kind whatever in connection with the wire prior to the very moment of the accident. Mrs. Welsh testifies that the broken wire was in contact with one of the wires of the street railway company on Harford Avenue. She says: "The broken wire had fallen against the trolley across the wire that crosses the trolley pole."

The evidence shows that the boy was injured by burns, caused by an electric current, but it does not show where the current came from. The evidence does not show that the defendant's wire which broke carried a harmful current, or indeed, any current whatsoever, and the reasonable inference to be drawn from the evidence, in view of the statement of Mrs. Welsh given above, is that the current which caused the accident came from the trolley wire, being communicated to the boy's body through the broken wire of the defendant, the Consolidated Gas Electric Light and Power Company.

As to the Baltimore Electric Company, there is no evidence that this company was in any way whatsoever connected with the injury, and, we believe, the propriety of the ruling of the lower Court as to this company is not questioned.

The plaintiff's contention, as we understand it, is that all that is necessary for him to prove in a case of this kind is, first, that the plaintiff was on a public highway; second, that the defendant's wire broke, and in falling struck him, and, third, that injury resulted. They claim that the doctrine of *res ipsa loquitur* applies under such a state of facts, and that it is not necessary for them to give any further evidence of negligence; that it is not necessary to show what caused the wire to break and fall, or how long it had been down, or whether it broke through a latent defect, or by unusual weather conditions, or whether or not the defect that caused the break was something that could have been discovered or prevented by reasonable care, or whether the wire in question did, or did or not, carry a dangerous current, or for what purpose it was used, or where the current came from that

injured the boy, or whether or not the defendant maintained a proper system of inspection, or whether accidents of this kind can in all cases be prevented, or any of the surrounding circumstances whatsoever. We submit that this certainly is not the law in Maryland..

This Court has stated expressly in two recent cases when the doctrine of *res ipsa loquitur* will apply. *Benedick* v. *Potts,* 88 Md. 52; *Strasburger* v. *Vogel,* 103 Md. 85.

In the case first cited JUDGE MCSHERRY, quoting with approval *Thomas on Negligence,* says: "The doctrine applies to two classes of cases only—First, when the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation; second, where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of persons or property and is so tortious in its quality as, in the first instance at least, to permit no inference save that of negligence on the part of the person in the control of the injurious agency."

This identical language is again repeated in the case of *Strasburger* v. *Vogel,* 103 Md. 89, and in *Schaeffer* v. *South Baltimore Car Works,* 96 Md. 106.

The present case, of course, cannot come within the first class defined by JUDGE MCSHERRY, and, we submit, that it is almost equally clear that it cannot come within the second class. The fact proved must, in the language of JUDGE MC-SHERRY—*"permit no inference save that of the negligence on the part of the person in the control of the injurious agency."*

The fact proved in this case is merely that a wire broke and fell on a public highway. Can it possibly be said that this permits of no inference except that of negligence on the part of the person owning and maintaining the wire? It is a matter of common knowledge that wires suspended from poles on public highways often do break, and that even with the highest degree of care on the part of the defendant, it is impossible to prevent the occasional breaking of such a wire. They are exposed to the open air and the action of the ele-

ments. They are necessarily swayed by the winds, made wet and, heavy by rain or snow; they contain oftentimes latent defects not discoverable by the greatest care and best known methods of inspection (*City Passenger Railway* v. *Nugent,* 86 Md. 349), and they are also liable to destruction or injury by the action of third parties, particularly so in a case like this where several companies are using the same pole.

The doctrine for which the appellant contends would, in effect, make electric companies insurers of the safety of their wires, and this the Courts all over the country have repeatedly said is not the case. See also *Light and Power Co.* v. *Lusby,* 100 Md. 634.

The defendant at the trial below relied largely on the decision in the case of the *Western Union Telegraph Company* v. *State, use of Nelson,* 82 Md. 313, in which the doctrine of *res ipsa loquitur* was held to apply, but the distinguishing fact is that in the *Nelson Case* the broken wire which caused the injury had been hanging over a public highway, in a broken condition, for a period of at least two weeks. The fact, therefore, which "spoke for itself" in this case was that the defendant had allowed its wire to remain in a broken and dangerous condition over a public highway for a space of two weeks. It must be conceded, under such circumstances, that the defendant either knew, or ought to have known of the dangerous condition of its wire, and, under such circumstances, this Court said that the doctrine of *res ipsa loquitur* applied, but the proof in the *Nelson Case* and in the present case is entirely different. Whereas the *Nelson Case* showed a dangerous condition existing for at least two weeks, the plaintiff here has entirely failed to show anything of the kind. He has not shown that the dangerous condition existed for a single moment before the accident. It may be reasonable enough to hold an electric company liable for injuries caused by a dangerous condition which has existed for two weeks by reason of the breaking of a wire, but it is a very different thing to attempt to hold such a Company liable for every accident caused by such a break, even though the break

and accident occurred at the same moment of time.    See *Schaeffer* v. *South Baltimore Car Works,* 96 Md. 88.

In *Brymer* v. *Southern Pacific Company,* 90 Cal. 496, the mere fact of the breaking of a chain was held insufficient.

In *Simpson* v. *Pennsylvania Locomotive Works,* 139 Pa. St. 245, the unexplained breaking of an emery wheel.

In *Sack* v. *Dolese,* 137 Ill. 129, the breaking of a brake chain on a car; and in

*Duff* v. *Upton,* 133 Mass. 347, the breaking of a derrick.

In all of these cases it was held that proof of the breaking of the appliance in question was not sufficient to send the case to the jury.

Why should there be any stronger presumption of negligence in the case of the breaking of an electric wire? It is true that Courts have held electric companies to a high degree of care in view of the dangerous character of the agency which they use, but the breaking of the appliances in some of the cases above mentioned proved equally disastrous with the results to be expected from the breaking of an electric wire. Thus, in the *Schaeffer Case,* the bolts which broke held a knife blade attached to a cylinder making two thousand revolutions a minute, and the dangerous results of the breaking of the bolts, which would naturally cause the knife blade to fly across the room with great rapidity, may well be imagined.

*Brady* v. *Consolidated Gas Company,* 85 Md. 642, was an action against a gas company on account of a death said to have been caused by inhaling illuminating gas which, it was claimed, came from a leaky pipe in the cellar of a dwelling house. Gas, like electricity, is a dangerous agency, both by reason of its poisonous and explosive qualities. There was a break in the pipe, and it was argued that this ought to be sufficient evidence of negligence. The Court, however, adopted the opposite view, commented upon the fact that the cause of the break was not explained by the evidence, and declared that the company could not be liable without actual notice of the existence of the break.

The case principally relied on by the plaintiff below was

that of *Haynes* v. *Gas Company,* 114 N. C. 206. It is true that some of the language used in that case, when read apart from the facts, would appear to support the plaintiff's contention; but the facts showed that there was not only a broken wire, but a dangerous and improper method of permanent construction in use on a public highway, inasmuch as a guy wire attached to the defendant's pole was so constructed as to be in actual contact with a trolley wire. A permanent condition of this kind as part of the construction adopted and used by the defendant on a public highway undoubtedly presented a clear case of negligence. But see *Western Union Telegraph Company* v. *Thorn,* 64 Fed. Rep. 291.

In 1 *Lackawanna Legal News,* p. 351, *Hand* v. *Central Penn. Tel. Co.,* the plaintiff was injured by coming in contact with a telephone wire which was down on a public highway and in contact with an uninsulated guy wire of an electric railway. The Court said it was not shown that the wire was originally faulty, nor that it had remained in place so long that the company ought to have known of its defective condition, and that, therefore, it was not error for the trial judge to withdraw the question of the defendant's negligence from the jury.

In 19 *Texas Civil Appeals,* 631, *Citizens' Ry. Co.* v. *Gifford,* the lower Court held that it was the duty of the defendant, an electric railway company, to so construct and maintain its wires as to prevent injuries to persons who may come in contact with such wires, and that a failure to so construct and maintain their wires would constitute negligence. This is practically the doctrine for which the appellant here contends. The appellate Court, however, in the case said that the granting of this instruction below was reversible error.

A collection of the cases bearing on this subject will be found in *Joyce on Electric Law,* section 450, and from reading all of the cases it will, we submit, be found that a defendant has been held liable for an injury caused by a broken wire only in cases where the wire had remained in a dangerous condition for such a length of time as to justify the inference

that a reasonable system of inspection would have discovered it, or, in cases where there was some actual notice to the defendant of the dangerous condition, or some proof of an insecure and dangerous condition of the wire before the break.

It was argued for the plaintiff below that the doctrine of *res ipsa loquitur* is, after all, mainly a question of the burden of proof, and that it would be more reasonable, in view of the fact that the defendant owns and controls its own wires, to put the burden of proof on it to show that the wire did not fall through negligence, rather than to put the burden on the plaintiff to show that it did fall from such cause. This argument seems plausible on its face, but it would work injustice to the defendant in a large class of cases where it is imposible for either party to prove what made the wire fall. The rule would also, we submit, be directly contrary to the rule three times approved by the Court—that is to say, that the doctrine applies only in two classes of cases: First, between common carrier and passenger, and, second, where the act proved permits of no inference save that of negligence. The appellant's argument would, in effect, add a third class of cases, to wit, where the circumstances of the case are such that it is easier for the defendant to get proof of the cause of the happening of the thing proved than it is for the plaintiff to get such evidence. If such a proposition were once admitted, there is no telling how far it would extend. Such a doctrine, were it the law in this State, would certainly have caused many of the cases cited above to have gone to the jury.

*Geo. Dobbin Penniman* and *Shirley Carter* filed a brief for the Chesapeake and Potomac Telephone Co., appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The question presented by this appeal is a narrow one. It is whether the fact, that a wire of an electric lighting company strung over the public street of a city fell upon and injured a person passing along the street, of itself affords sufficient *prima facie* proof of negligence on the part of the com-

pany to cast upon it the burden of overcoming that presumption.

There is evidence in the record, which for the purpose of this inquiry must be taken to be true, that as the equitable plaintiff, a boy eight years old, was passing along Harford Avenue, a public street of Baltimore City, he swung himself around a pole standing in the pavement, when he came in contact with a hanging wire charged with electricity and badly burned his head and his hand. The evidence does not show the existence of any sudden or unforeseen cause for the falling of the wire, nor show with certainty whether it fell before or at the time of its coming in contact with the boy. He brought this suit for damages for his injury against the appellee and two other companies, all of whom were declared against as owners of the wire, but the appellee admitted at the trial below that it was the owner of, and controlled, the wire, and the case was not pushed against the other defendants.

At the trial in the Court below the case was taken from the jury at the close of the plaintiff's evidence, by the granting of the defendants' prayer, for want of legally sufficient evidence to warrant a recovery. From the judgment for the defendant resulting from that ruling the plaintiff appealed.

The recent widespread adoption of overhead wires upon public streets for the transmission of high tension electric currents for supplying light and power has been followed by numerous injuries to persons who have come in contact with broken and fallen wires. The series of damage suits flowing from these accidents have called for frequent consideration by the Courts of the reciprocal rights and duties of the public and the owners of those dangerous instrumentalities. The Courts agree that outside of any contractual relation the very nature of the business of transmitting such currents along highways imposes upon those engaged in it the legal duty to exercise, for the protection of all persons lawfully using the highways, the high degree of care commensurate with the danger incident to the proximity thereto of the wires charged

with their invisible but deadly power. *W. U. Tel. Co.* v. *State, use Nelson,* 82 Md. 293 ; *Brown* v. *Edison Electric Co.,* 90 Md. 400 ; *Newark Elec. Light & P. Co.* v. *Ruddy,* 62 N. J. L. 505 ; *Sub. Elec. Ry. Co.* v. *Nugent,* 32 L. R. A. 700 ; *Postal Tel. Co.* v. *Jones,* 133 Ala. 217 ; *Phelan* v. *Louisville Elec. L. Co.,* 91 S. W. 703 ; *Wittleder* v. *Cit. Elec. & S. Co.,* 50 N. Y. App. 478.

It has been held in different cases that electric companies are not insurers of the public using the streets over which their wires are strung on poles and are therefore not liable for all injuries resulting from contact with their wires irrespective of the circumstances under which they occur. What they are liable for is the exercise of that degree of care which the law imposes upon them in view of the dangerous character of their wires and the rights of the public in the highways over which they are suspended. In *Nelson's Case, supra,* we said, in defining the measure of responsibility of the defendant companies to the plaintiff in the use by him of a highway over which their wires were strung: "The privileges so granted (to the defendant companies) thus to encumber the public highway with appliances so likely to become dangerous to the public safety unless properly employed and controlled, imposed upon them and each of them the duty of so managing their affairs as not to injure persons lawfully on the streets. They owed it to Nelson that his lawful use of the street should be substantially as safe as it was before the telegraph and railway plants had so occupied it. It was their plain duty not only to properly erect their plants, but to maintain them in such condition as not to endanger the public. It follows from this, that if the property of the defendants was not in proper condition and by reason thereof Nelson was injured, these facts alone, in the absence of other evidence to show that the defect originated without the fault of the companies, afford a *prima facie* presumption of negligence. In such cases the doctrine of *res ipsa loquitur* ('a simple question of common sense,' *Whittaker's Smith on Neg.* 423) fairly applies."

It is true that in *Nelson's Case* the wire which did the harm

had been hanging down for about two weeks during at least a portion of which time it had been charged with a current of electricity, but in many adjudicated cases and text-books it has been held that the mere fact that a live electric wire falls down upon a public street over which it has been suspended and injures a person lawfully there, is *prima facie* evidence of negligence on the part of the owner of the wire. *Newark E. L. & P. Co. v. Ruddy, supra; Hebert v. Lake Chas. I. L. & W. Co.,* 111 La. 522; *Snyder* v. *Wheeling Elec. Co.,* 43 W. Va. 661; *Denver Con. Elec. Co.* v. *Simpson,* 21 Col. 371; *Boyd* v. *Portland Gen. Elec. Co.,* 57 L. R. A. 619; *Thomas* v. *W. U. Tel. Co.,* 100 Mass. 156; *Jaggard on Torts,* 864; 2 *Cooley on Torts,* 3rd Ed. 1426; *Joyce on Electric Law,* sec. 606; *Elliott on Roads and Streets,* sec. 826.

Some of these authorities rest the position taken by them upon the familiar doctrine asserted in *Scott v. London & St. R. Docks Co.,* 3 Hurlst. & C. 596: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the defendants that the accident arose from want of care." The same proposition was asserted in the well-known case of *Byrne* v. *Boadle,* 2 Hurlst. & C. 722, which was relied on by us in *Nelson's Case,* and was recognized by us in cases for injuries caused by a brick falling from a house abutting on a highway in *Murray* v. *McShane,* 52 Md. 217; *Decola* v. *Cowan,* 102 Md. 551; *Strasburger* v. *Vogel,* 103 Md. 85; and in the case of crossties falling from a moving railway car on which they were being transported in *Howser* v. *C. & P. R. R. Co.,* 80 Md. 146. The exceedingly dangerous character of live electric wires lends force to the strict application of this rule of law to accidents occurring through contact with such wires when out of proper condition or of their proper place.

In view of the exceedingly dangerous character of electric light and power wires and the peril to which their suspension

over the public streets exposes the public who constantly traverse and use the streets, we think it both just and reasonable to hold that the injury of a person upon the surface of the street by contact with a hanging or fallen wire of that character, in itself, if unexplained, affords sufficient *prima facie* evidence of negligence on the part of the owner of the wire to entitle the plaintiff to go to the jury in an action for damages for the injury.

In our opinion, the evidence offered by the appellant as plaintiff in the case before us was sufficient to raise such a *prima facie* presumption of negligence against the appellee company as to call for an explanation from it, and therefore sufficient to carry the case to the jury, and that the learned Judge below erred in granting the defendants' prayer. Of course, upon a retrial of the case, the company as defendant will be permitted to rebut the presumption of negligence and show by any lawful evidence, if it can do, that it has fully discharged its duty to the public in the erection and maintenance of its wires, and upon the merits of the case as it shall then be presented the jury can determine.

The judgment appealed from will be reversed and the cause remanded for a new trial.

> *Judgment reversed with costs and case remanded for new trial.*