LEWIS HUMPHREY *v.* TWIN STATE GAS & ELECTRIC COMPANY.

January Term, 1927.

Present: WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed October 5, 1927.

*Electricity—Application of Maxim Res Ipsa Loquitur upon Proof of Escape of Electric Current and Injury Therefrom —Effect of Injured Party Being Trespasser on Land of Third Person at Time of Injury—Actionable Negligence— Evidence of Death of Another Person by Coming into Contact with Electrified Wire as Showing Volume of Current Carried—Damages—Nervous Shock—Effect of Maxim Res Ipsa Loquitur on Burden of Proof—Effect of Maxim Where Evidence So Clear and Convincing Reasonable Minds Would Not Differ in Conclusions Therefrom—When Maxim Res Ipsa Loquitur Is Made Unavailing—Sufficiency of Evidence To Defeat Maxim—Effect on Maxim of Alleging Specific Acts of Negligence and Offering Proof Thereof.*

1. In action of tort to recover for personal injuries resulting from accidental electrification of wire fence, with which plaintiff came into contact, by the sagging or falling thereon of wire of defendant's high voltage power line, *held* that doctrine of *res ipsa loquitur* applied, and proof of escape of current and injury therefrom made *prima facie* case entitling plaintiff to go to jury on question of defendant's negligence.

2. In such action, where plaintiff was injured and his companion killed while hunting on another person's land, by coming into contact with wire fence, which had been accidently electrified by the sagging or falling thereon of wire of defendant's high voltage power line, *held* that mere fact that plaintiff was trespasser on land of third person did not *ipso facto* preclude plaintiff from recovery.

3. In such action, actionable negligence depends, not upon what actually happened, but upon what reasonably might have been expected to happen, and is not established unless it be shown that a prudent man, situated as defendant was at time of his alleged default, knowing what he knew or should have known,

would have regarded injury to plaintiff or to one of class to which he belonged, as likely to result from act or omission complained of, and that some legal injury resulted to plaintiff, as a proximate consequence of such act or omission.

4. In such action, testimony offered by plaintiff to show that when he regained consciousness after shock of coming into contact with electrified wire fence, he discovered the lifeless body of his companion standing against fence, *held* admissible as tending to show that fence was charged with electricity and to show volume of current it carried.

5. In such action, exclusion of expert medical testimony to show that plaintiff was suffering from traumatic neurosis, and that, when he recovered consciousness after shock of coming into contact with electrified wire fence, sight of lifeless body of his companion standing against fence was a constant contributing factor to his present impaired nervous condition, *held* error, since plaintiff was entitled to recover for all physical injury he suffered proximately resulting from defendant's negligence, including such disturbance of plaintiff's nervous system as accompanied such injury.

6. Applicability of maxim *res ipsa loquitur* does not affect burden of proof, but merely shifts burden of evidence, and requires defendant to go forward with evidence tending to exonerate him.

7. Application of maxim *res ipsa loquitur* does not affect general rule that, when evidence is so clear and convincing that reasonable minds would not differ in their conclusions therefrom, question of defendant's negligence is one of law for court.

8. A defendant is not required to overcome the *prima facia* case which maxim *res ipsa loquitur* makes of evidence showing fact of accident happening in circumstances making maxim applicable, but is required merely to produce exculpating evidence of equal weight, whereupon plaintiff fails.

9. In action of tort to recover for personal injuries resulting from accidental electrification of wire fence, with which plaintiff came into contact, by the sagging or falling thereon of wire of defendant's high voltage power line, *held* that evidence tending to negative defendant's negligence was not sufficiently decisive to justify directed verdict for defendant.

10. In action of tort for negligence, plaintiff does not forfeit his right to rely on maxim *res ipsa loquitur*, when applicable, by alleging specific acts of negligence and giving or offering evi-

dence to support them, nor is he estopped by failing in his proof of such allegations.

ACTION OF TORT to recover for personal injuries resulting from accidental electrification of wire fence, with which plaintiff came into contact while hunting on premises of a third person, by sagging or falling thereon of defendant's high voltage power wire. Plea, general issue. Trial by jury at the April Term, 1926, Windham County, *Sherburne,* J., presiding. At close of plaintiff's evidence, motion for a directed verdict was granted, and judgment entered on such verdict. The plaintiff excepted. The opinion states the case. *Reversed and remanded Motion for reargument denied.*

*Carpenter & Clawson* and *Harold E. Whitney* for the plaintiff.

*Fitts & Miller* and *M. P. Maurice* for the defendant.

POWERS, J. [1] This is a tort action brought to recover for personal injuries sustained by the plaintiff from the accidental electrification of a wire fence with which he came in contact while hunting on the premises of one Thomas in the town of Brattleboro. The defendant is a corporation engaged in the business of generating and distributing electrical energy for heating, lighting, and power purposes. It owns and maintains a plant at West Dummerston, from which its transmission line, carrying a current of 11,000 volts, extends to a substation in Brattleboro. This line ran along the right of way of the West River Railroad, but in the spring of 1925, the high water carried out a part of the roadbed, taking a section of the defendant's pole line with it. Thereupon, the defendant, having obtained Thomas' permission so to do, effected a temporary repair by stringing its wires on poles and trees across Thomas' woodlot, intending to rebuild its line on its former location as soon as the roadbed was repaired. In constructing this temporary line, a cross-arm was attached to a tree on the Thomas land near a barbed wire fence which separated that land from the railroad right of way. The wire, as strung by the defendant's servants, was attached by a tie wire to an insulator mounted on this cross-arm. On October 28, 1925, this tie wire broke, and the live

feed wire which it held pulled off and sagged onto the wire fence charging it with a deadly current of electricity.  On the day specified, the plaintiff and a companion named Brothers, were out hunting and passed over the Thomas land.  They pursued a well-worn path or road which took them to the wire fence.  They attempted to pass through or over this fence and came in contact with it.  Brothers was instantly killed by the current, and the plaintiff was severely injured thereby.  At the trial of the case below, at the close of the plaintiff's evidence, the defendant moved for a directed verdict, which motion was granted, and the plaintiff excepted.  No question of contributory negligence or assumption of risk is involved, and it cannot successfully be claimed that the question of the defendant's negligence was not for the jury, because the doctrine of *res ipsa* applies, and proof of the escape of the current and injury therefrom made a *prima facie* case.  *Drown* v. *New England Tel. & Tel. Co.*, 80 Vt. 1, 13, 66 Atl. 801; *Spinney's Admx.* v. *O. V. Hooker & Son*, 92 Vt. 146, 154, 102 Atl. 53; *San Juan L. & Tr. Co.* v. *Requeenas*, 234 U. S. 89, 56 L. ed. 680, 32 Sup. Ct. 399.  And this rule is equally applicable, where as here, the injury comes from a sagging or fallen wire.  *Walter* v. *Baltimore Elec. Co.*, 109 Md. 513, 71 Atl. 953, 22 L. R. A. (N. S.) 1178; *Snyder* v. *Wheeling Elec. Co.*, 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 A. S. R. 922; *Diller* v. *Northern Cal. Power Co.*, 162 Cal. 531, 123 Pac. 359, Ann. Cas. 1913D, 908; *Hebert* v. *Lake Charles, etc., Co.*, 111 La. 522, 35 So. 731, 64 L. R. A. 101, 100 A. S. R. 505; *Newark Elec. L. & P. Co.* v. *Ruddy*, 62 N. J. Law, 505, 41 Atl. 712, 57 L. R. A. 624.

[2, 3]  The parties disagree as to the plaintiff's standing while he was on the Thomas land:  The plaintiff says he was there by an implied license; the defendant says he was a trespasser.  We do not stop to consider this question.  He was not an invitee, and for the purposes of this discussion we will assume that he was a trespasser.  Being such, he could recover nothing from Thomas for injuries resulting from the condition of the premises, though these existed through the latter's carelessness.  This result follows from the fact that Thomas owed him no duty to keep the premises safe for his unlawful use.  The defendant takes the position that, so far as the plaintiff's rights go, it stands in Thomas' position and can make the same defense that he could; that it owed the plaintiff no duty, and conse-

27

quently any negligence proved against it is not actionable so far as the plaintiff can assert. Many cases sustaining this doctrine are to be found in the books. They are carefully collected and analyzed in the defendant's brief. Indeed, some say that the weight of authority is in favor of the rule contended for. However, upon careful consideration, we are unwilling to follow them. Traced to its source, the rule exempting a landowner from liability to a trespasser injured through the condition of the premises, is found to have originated in an overzealous desire to safeguard the right of ownership as it was regarded under a system of landed estates, long since abandoned—under which the law ascribed a peculiar sanctity to rights therein. Under the Feudal system as it existed in Western Europe during the Middle Ages, the act of breaking a man's close was an invasion of exaggerated importance and gravity. It was promptly resented. It was under this system that the action of trespass *quare clausum* developed, beginning as a penal process, and so criminal in essence, and finally becoming a means of redressing a private wrong. Happily, in these more neighborly times, trespasses merely technical in character are usually overlooked or excused, unless accompanied with some claim of right. The object of the law being to safeguard and protect the various rights in land, it is obviously going quite far enough to limit the immunity to the one whose rights have been invaded. Nor does logic or justice require more. A trespass is an injury to the possession; and as it is only he whose possession is disturbed who can sue therefor, so it should be that he, alone, could assert the unlawful invasion when suit is brought by an injured trespasser. One should not be allowed ''to defend an indefensible act'' by showing that the party injured was engaged in doing something which, as to a third person, was unlawful.

Authorities sustaining this view of the law are not wanting. In *Guinn* v. *Delaware & Atl. T. & T. Co.*, 72 N. J. Law, 276, 62 Atl. 412, 3 L. R. A. (N. S.) 988, 111 A. S. R. 668, a leading case on this side of the controversy, a boy was killed by coming in contact with a guy wire that had become charged with electricity. He was, at the time, on the premises of one Gulick, without right, so far as appeared. The action was defended on the ground that, being a trespasser where he was, the defendant owed him no duty any more than Gulick did. The recovery was sustained on the ground that if the boy was a trespasser on

Gulick's land, "his wrong would be to the land-owner alone, not a public wrong, nor a wrong to the defendant"; and it was said therein that "no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with."

In *Boutlier* v. *Madden Elec. Co.*, 226 Mass. 479, 116 N. E. 251, a case involving the liability of the defendant to one who was either a trespasser or bare licensee upon land not owned by either party, after quoting the language of the New Jersey court as last above recited, the court said: "If we assume that the defendant companies had a right to maintain their wires over the open space, the plaintiff might still be entitled to recover as her intestate has not been shown to have interfered with the rights of the defendant."

In *Ferrell's Admr.* v. *Durham Trac. Co.*, (N. C.) 90 S. E. 893, L. R. A. 1917B, 1291, a sagging wire of the defendant caught a trespasser riding on the top of a freight car in the train of the Seaboard Air Line R. R. Co., and swept him to his death. Defense was made on the ground that the decedent was a trespasser on the car and therefore had no ground of action against the defendant. A judgment for the plaintiff was sustained on the ground that "an injured party is not barred of a recovery for a wrong done him because of the mere fact that he was, at the time, a trespasser upon the premises of a third person."

In *Stedwell* v. *Chicago* (Ill.), 130 N. E. 729, 17 A. L. R. 829, a boy climbed a latticed pillar supporting an elevated railway and came in contact with an electric wire belonging to the defendant, and was severely injured. Recovery was sustained on the ground that the plaintiff "was not a trespasser as to the plaintiff-in-error. So far as it was concerned, defendant-in-error was rightfully on the pillar."

In *Nelson* v. *Branford Lighting & Water Co.*, 75 Conn. 648, 54 Atl. 303, a boy was killed by coming in contact with an electric wire which was strung over a highway bridge, from which he was about to dive into the river below. The defendant said he was a trespasser there, but a recovery was upheld on the ground that "as far as the defendant is concerned, the plaintiff's intestate was rightfully on the truss, and the defendant owed him the duty of not unnecessarily exposing him to dangers to life which reasonable care on its part could avoid."

In *Lipovac* v. *Iowa Ry. & Lt. Co.* (Ia.), 210 N. W. 573, a boy was killed by coming in contact with an electric wire while he was on the land of a third person. Defense was predicated upon the fact that the boy was a trespasser there. A recovery was sustained on the ground that the fact that "the injured boy may have been a trespasser upon the land of said third person, is not available as a defense to the appellant," citing *Godfrey* v. *Kansas City L. & P. Co.*, 299 Mo. 472, 253 S. W. 233.

In *Puchlopek* v. *Portsmouth Power Co.* (N. H.), 136 Atl. 259, wherein a boy was killed by coming in contact with an electric wire while he was in an alley, it was said, though not decided, that "the defendant's claim that because the decedent was a trespasser in the alley he was not entitled to protection from its negligence cannot be sustained. * * * If the decedent was a trespasser in the alley, that did not make him one as to the defendant."

In *Fitzpatrick* v. *Penfield*, 267 Pa. 564, 109 Atl. 653, a boy was injured by a falling wall while playing on an adjoining lot. A recovery was sustained on the ground, among others, that "the defense of no liability for injury to a trespasser is personal to the owner of the premises trespassed upon; it does not inure to the benefit of strangers to the title, adjoining owners, or other trespassers."

In *Birmingham Ry. Lt. & P. Co.* v. *Cockrum*, 179 Ala. 372, 60 So. 304, the plaintiff recovered for injuries received by coming in contract with an electric wire while she was on the premises of a third person. In referring to the question under discussion, the court citing the Guinn Case, *supra,* said: "It has been held by the New Jersey court, and we think properly so, that a plaintiff was entitled to recover for injuries resulting from the simple negligence of a telephone company unless he was a trespasser as against the company. If the plaintiff was injured upon the premises of one other than the defendant, it mattered not whether he was a licensee or a trespasser. 'If he was a bare licensee, he would still be there lawfully. If a trespasser, his wrong would be to the landowner alone, not a public wrong, nor a wrong to the defendant.'"

In *Prarie Pipe Line Co.* v. *Dalton* (Tex. Civ. App.), 243 S. W. 619, cattle were poisoned by drinking the water of a stream into which defendant's oil had been allowed to escape. It was urged that the cattle were trespassers in the pasture

where they drank the water and that the company owed no duty to their owner. But the court held otherwise, saying that it was only the owner of the pasture that could invoke the rule referred to.

In *Cox* v. *U. S. Coal & Coke Co.* (W. Va.), 92 S. E. 559, the plaintiff was injured while walking on the track of the Norfolk & Western Railway, by a piece of "bone" thrown by defendant's employee. It was urged in defense that the plaintiff was a trespasser on the track. But the court held that this fact would not avail the defendant, saying: "* * * We do not think that the fact that plaintiff may have been a trespasser, as between himself and the railroad company, can affect defendant's liability. That defense would apply in case plaintiff was a trespasser upon the property of the defendant."

In *Neustiehl* v. *Friedman,* 153 N. Y. S. 120, a child was playing on a lot next to defendant's factory, and was injured by a box thrown out of a window of the factory by defendant's servant. The defense claimed that there was no liability because the child was a trespasser on the adjoining lot. After pointing out a defect in the proof of this fact, the court said: "But apart from that consideration, plaintiff's child was not a trespasser as to the defendants, or rather the point that plaintiff's child may have been a trespasser on an adjoining lot cannot be raised by defendants." *Bottum's Admr.* v. *Hawks,* 84 Vt. 370, 79 Atl. 858, is not to the contrary. The right of the defendant to assert the fact that the intestate was a trespasser on a third person's land was not considered. It was not denied that the child was a trespasser on the defendant's property, and, accordingly the case was treated as one involving the attractive nuisance doctrine; which presupposes that the person injured is a trespasser on the land or premises of the party charged.

We cannot speak so confidently of *Fay* v. *Kent,* 55 Vt. 557, or of *Kennedy* v. *Morgan,* 57 Vt. 46. It must be admitted that it is difficult, if not impossible, to reconcile these cases with the conclusion herein reached. We shall make no attempt to do so. It is enough to say that a re-examination of the questions involved convinces us that in so far as these cases are out of harmony with the views herein expressed, they should hereafter be disregarded.

Electricity has come to be a necessary factor in almost all lines of activity. Its usefulness should not be impaired or

curtailed. But it is highly destructive when it escapes control; its capacity for harm is but little reduced by distance; it is invisible and undiscoverable; it strikes instantly and without warning. We deem it of the highest consequence, especially in a rural state like ours where hunters, fishermen, and others roam the woods when lawful, almost at will, and where high tension electric lines run in every direction, and wire fences are in common and increasing use, that those dealing in such a deadly agency should be accountable to all whose likelihood of injury could reasonably be foreseen.

The question we have discussed is one quite apart from that of the defendant's negligence or that of proximate cause, though closely related to them. Whenever the issue is one of negligence *vel non*, there is involved a consideration of what the person charged should have anticipated as to the results of his act or omission. Thus far, the existence of actionable negligence depends, not upon what actually happened, but upon what reasonably might have been expected to happen. Unless it be shown that a prudent man, situated as the defendant was at the time of his alleged default, knowing what he knew or should have known, would have regarded injury to the plaintiff or to one of the class to which he belonged, as likely to result from the act or omission complained of, actionable negligence is not made out. And though this be shown, it remains for the plaintiff to establish the fact that some legal injury resulted to him as a proximate consequence of such act or omission. All we have herein decided is that the mere fact that this plaintiff was a trespasser on the Thomas land does not, *ipso facto*, preclude him from a recovery in this action.

[4] The plaintiff offered to show that when he regained consciousness after the shock, he discovered the lifeless body of his companion standing against the fence. This was offered on the ground that it tended to establish the fact that the fence was charged with electricity and to show the volume of the current it carried, and that it injuriously affected his nervous system. It was excluded and the plaintiff excepted.

The evidence was admissible on the grounds first stated,— if not on both. *Ohrstram* v. *Tacoma,* 57 Wash. 121, 128, 106 Pac. 629; *Gilbert* v. *Duluth G. E. Co.,* 93 Minn. 99, 100 N. W. 653, 106 A. S. R. 430. The fact that this wire fence was electri-

fied at the time in question and the intensity of the electric charge were of the very gist of the action.

Whether in the circumstances, the error in its exclusion was harmful, we need not now determine. The question of its admissibility is much like one involved in the case of an explosion, where evidence of injuries to others is admissible to show the force and violence of the explosion. *Rathbun* v. *White,* 157 Cal. 248, 107 Pac. 309.

[5] The plaintiff offered to show by Dr. Lynch, an expert, that the former was suffering from traumatic neurosis, and that the sight of his companion under the circumstances above set forth was a constant contributing factor to his present impaired nervous condition. This offer was excluded and therein was error. The plaintiff was entitled to recover for all the physical injury he suffered proximately resulting from the defendant's negligence, including such disturbance of his nervous system as accompanied such injury. *Thayer* v. *Glynn,* 93 Vt. 257, 259, 106 Atl. 834. And if the condition he was in at the time of the trial was affected by the shock caused by the sight of Brothers as above, it was legitimate to show the fact in explanation of such condition.

*Reversed and remanded.*


### ON MOTION FOR REARGUMENT.*

[6-9] The defendant has filed a motion for reargument based upon the ground that we have improperly applied to the case the maxim *res ipsa loquitur;* briefs have been filed and considered. Nine assignments are urged in support of the motion. Four of these can fairly be treated as predicated upon the theory that the motion for a verdict was properly granted for that the evidence so conclusively refuted the charge of negligence that, notwithstanding the maxim, opposing inferences therefrom could not reasonably be drawn and only a question of law was presented. The abstract law is as defendant claims. The applicability of the maxim does not affect the burden of proof. It merely shifts the burden of evidence, and requires the defendant to go forward with evidence tending to exonerate him. *Houston* v. *Brush,* 66 Vt. 331, 346, 29 Atl. 380; *Demarchier*

*Opinion on motion for reargument filed December 8, 1927.

v. *Frost,* 91 Vt. 138, 144, 99 Atl. 782.   Nor does the application
of the maxim affect the general rule that when the evidence is so
clear and convincing that reasonable minds would not differ in
their conclusions therefrom, the question of the defendant's
negligence is for the court, and not for the jury.   *Houston* v.
*Brush,* 66 Vt. 331, 347, 29 Atl. 380.   It was said in that case
that the maxim does not *apply* to such a case.   Perhaps it would
be more accurate to say that the maxim does not *avail* in such a
case.   The thing that defeats the plaintiff is not that the maxim
does not apply, but that its force and effect are rebutted by the
proof.   A defendant is not required to overcome the *prima
facie* case which the maxim makes of evidence showing the fact
of the accident happening in circumstances making the maxim
applicable.   All he is called upon to do is to produce exculpat-
ing evidence of equal weight.   *Desmarchier* v. *Frost,* 91 Vt. 138,
144, 99 Atl. 782; *Scellars et ux.* v. *Universal Service Every-
where* (Cal. App.) 228 Pac. 879; *Glowacki* v. *North-
western Oh. Ry. & P. Co.* (Ohio), 157 N. E. 20, 24.   In
such cases, the plaintiff fails if the force of the maxim is
counter-balanced by the facts disclosed.   The trouble with the
defendant's position here is that its case does not come within
the rule invoked.   The evidence tending to negative its negli-
gence was not so decisive as to justify a directed verdict.   There
was evidence, to be sure, tending to show that the defendant had
discharged the duty of care which the law imposed upon it.
But the current escaped.   Whether the tie wire broke without
the defendant's fault, or whether it broke through insufficiency
in size and strength, through lack of guying, or through other
causes for which the defendant was chargeable was an open
question too plainly for the jury to merit discussion.   Our atten-
tion is not called to a single case within the range of the maxim,
in which the proof was such that a defendant's verdict was
directed.   Indeed, Chief Justice Marshall says in the Glowacki
Case above cited, that no such case is to be found in the books.

[10]   Nor is there any merit in the defendant's argument
that by alleging specific acts of negligence and giving or offering
evidence tending to support them a plaintiff forfeits his right
to rely upon the maxim.   It is directly contrary to the law as
laid down in *Moore* v. *Grand Trunk Ry. Co.,* 93 Vt. 383, 390,
108 Atl. 334, and *Stewart* v. *Barre & Montpelier P. & T. Co.,*
94 Vt. 389, 401, 111 Atl. 526.   By pleading more facts than he

needed to, the plaintiff did not obligate himself to prove them. *Bosworth* v. *Bancroft*, 74 Vt. 451, 453, 52 Atl. 1050; *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 110, 130 Atl. 758. Nor did he estop himself by failing in his proof of such allegations. His *prima facie* case was complete when he showed an injury proximately resulting from the escape of the defendant's current. This was all he needed to cover by the allegations of his complaint.

*The grounds of the motion are unavailing and the same is denied. Let the entry go down.*