## LAW et al. v. RAILWAY EXPRESS AGENCY.

### No. 3565.

Circuit Court of Appeals, First Circuit.

April 30, 1940.

Myer J. Rubin, of Worcester, Mass. (James C. McDonald, of Worcester, Mass., on the brief), for appellants.

Austin M. Pinkham, of Boston, Mass. (L. C. Sprague, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, and MAHONEY, Circuit Judges, and McLELLAN, District Judge.

MAGRUDER, Circuit Judge.

Appeals have been taken from judgments for the defendant entered upon directed verdicts in two actions of tort for personal injuries. The actions were commenced in a Massachusetts state court, and subsequently removed to the federal district court on the ground of diversity of citizenship.

The accident occurred in Brattleboro, Vermont, on April 19, 1937. A private driveway between the Vermont Savings Bank Building and the building owned by Dunham Bros. runs from Main Street to the area in back of the two buildings. In the rear is a fence, at the top of a steep decline, beyond which is the Connecticut

River and a mountainous background. In 1919 the Vermont Savings Bank gave Dunham Bros. a revocable license "to allow the said Dunham Bros. Co. to use" the open area in the rear of the bank building for "driving teams and trucks on and over for the purpose of loading and unloading into and from the wholesale part of the store of said Dunham Brothers Company". It was expressly agreed "that this writing does not give to the said Dunham Brothers Company any right to the possession of said land". For twenty years the trucks of defendant Railway Express Agency had been making daily trips into the areaway to pick up outgoing shipments of boots and shoes from the wholesale department of Dunham Bros. We may assume that the license above mentioned was not limited to trucks owned and operated by Dunham Bros. but extended to trucks of an independent contractor, like the defendant, coming at the request of Dunham Bros. to pick up shipments. Even so, the defendant in using the area owned by the bank to turn its trucks around was merely a licensee crossing the land for a purpose in which the bank, the possessor, had no interest whatever.

On the day of the accident, defendant's servant had driven a truck along the private way and had brought it to rest around the corner just back of the bank building, the rear of the truck being two or three feet from the corner. According to the testimony of the driver, he had to wait there until another truck pulled away from the loading platform of Dunham Bros.; he then would, as customary, back the truck around from the rear of the bank building to the loading platform. While the truck was thus waiting, the plaintiff Jessie Law, an elderly lady, and her daughter, M. Ethel Law, the other plaintiff, entered the driveway intent upon getting a view of the scenery from the far end of the areaway back of the buildings. The jury would have been warranted in finding that as the plaintiffs reached the rear corner of the bank building they saw the truck standing there, motor off; that they were proceeding in back of the truck, when the driver without a warning signal suddenly started up the motor and began to back the truck around; that both plaintiffs were struck and injured by negligence of the driver in this operation.

The trial judge ruled that under the circumstances the only duty upon the Railway Express Agency was not to inflict wilful and wanton injury upon the plaintiffs; that as there was no evidence of wilful and wanton misconduct the defendant was entitled to directed verdicts.

Defendant-appellee urges that the judgments below were correct, on two grounds, first, that the plaintiffs were guilty of contributory negligence, and second, that the plaintiffs were trespassers on the premises of the bank.

The first ground is not well taken, because on the evidence it could not have been ruled as a matter of law that the plaintiffs were guilty of contributory negligence; and we do not understand that the trial judge intended so to rule.

The more serious contention has to do with the plaintiffs' assumed status as trespassers, and the duty owed to trespassers under the governing Vermont law. Some of the Vermont cases make a distinction between passive conditions and active conduct; in respect to the latter there are indications that even the possessor of land owes a duty of care to trespassers as well as to licensees. See Lindsay, Adm'r v. Canadian Pacific Railroad Co., 68 Vt. 556, 35 A. 513; Bottum's Adm'r v. Hawks, 84 Vt. 370, 372, 79 A. 858, 35 L.R.A.,N.S., 440 Ann.Cas.1913A, 1025; Lucas v. Kelley, 102 Vt. 173, 179, 147 A. 281. However this may be, it is certain that whatever immunity the possessor may have is not extended to a negligent licensee crossing the land not on the possessor's behalf but for his own convenience and for an object in which the possessor has no interest or concern. See Am.L.Inst.Restatement of Torts, §§ 383–386. This view is forcibly expressed by the Supreme Court of Vermont in Humphrey v. Twin State Gas & Electric Co., 100 Vt. 414, 139 A. 440, 56 A.L.R. 1011, where a trespasser on land of a third person was injured by coming in contact with a fallen electric wire which the electric company had strung across the land by permission of the owner. The court said (100 Vt. at page 418, 139 A. at page 442, 56 A.L.R. 1011):

"Traced to its source, the rule exempting a landowner from liability to a trespasser injured through the condition of the premises is found to have originated in an overzealous desire to safeguard the right of ownership as it was regarded under a system of landed estates, long since abandoned, under which the law ascribed a peculiar sanctity to rights therein. Under the

feudal system as it existed in Western Europe during the Middle Ages, the act of breaking a man's close was an invasion of exaggerated importance and gravity. It was promptly resented. It was under this system that the action of trespass quare clausum developed—beginning as a penal process, and so criminal in essence, and finally becoming a means of redressing a private wrong. Happily, in these more neighborly times, trespasses merely technical in character are usually overlooked or excused, unless accompanied with some claim of right. The object of the law being to safeguard and protect the various rights in land, it is obviously going quite far enough to limit the immunity to the one whose rights have been invaded. Nor does logic or justice require more. A trespass is an injury to the possession; and, as it is only he whose possession is disturbed who can sue therefor, so it should be that he, alone, could assert the unlawful invasion when suit is brought by an injured trespasser. One should not be allowed 'to defend an indefensible act' by showing that the party injured was engaged in doing something which, as to a third person, was unlawful."

The later case of Chicoine v. Cashman, 108 Vt. 133, 183 A. 487, is not a contrary authority. It cites the Humphrey case with approval and merely holds, as was indeed implied in the Humphrey opinion, that the immunity to trespassers in respect to dangerous conditions on the premises extends to lawful possessors whether or not they are the owners of the fee. The same had been held as to a lessee in possession in Amblo's Adm'x v. Vermont Associated Petroleum Corp., 101 Vt. 448, 144 A. 460. In the Chicoine case the court carefully referred to the defendant as "being in lawful possession" (108 Vt. at page 136, 183 A. at page 489). Had Dunham Bros. been in possession of the premises in question, it is possible that the defendant as a business invitee of Dunham Bros. would have been entitled to whatever immunities the possessor had, as has been held in some jurisdictions. Louisville Trust Co. v. Horn, 209 Ky. 827, 273 S.W. 549; Murphy v. Boston & Maine Railroad, 248 Mass. 78, 142 N.E. 782. The Vermont law on this point need not now be examined, for the license to Dunham Bros. definitely provided that possession was to remain in the Vermont Savings Bank. In relation to the bank as possessor, the Railway Express Agency was not a business invitee, but a gratuitous licensee crossing the land for its own convenience merely.

We conclude that under the circumstances of this case the defendant in the operation of the truck owed the plaintiffs a duty of ordinary care, even though the plaintiffs may have been on the bank's premises without right. Cf. Gilman v. Central Vermont Railway Co., 93 Vt. 340, 347, 107 A. 122, 16 A.L.R. 1102.

The judgment of the District Court in each case is vacated, the verdicts set aside and the cases remanded to that court for further proceedings not inconsistent with this opinion; the appellants recover costs of appeal.