## PRAIRIE PIPE LINE CO. v. DALTON.*
### (No. 9945.)

(Court of Civil Appeals of Texas. Fort Worth.
April·15, 1922. Rehearing Denied
May 27, 1922.)

**1. Waters and water courses ⬥74—Pipe line company held liable for damage to cattle caused by negligence in permitting oil to leak into creek.**

Owner of pipe line passing through a pasture not owned by such owner was liable for damage to cattle trespassing in such pasture from water in creek running through pasture into which the company had negligently permitted oil to escape from its pipe line, the doctrine limiting liability as to trespassers to damage from gross negligence being applicable only where the defendant is the owner of the land on which the trespass is committed.

**2. Waters and water courses ⬥77—Allegations held to raise issue of negligence of pipe line company in maintenance of pipe line.**

In an action against pipe line company for damage. to plaintiff's cattle, caused by negligence in permitting oil to escape from pipe line into creek from which the cattle drank water, allegation *held* sufficient to raise issue as to negligence of the company in the maintenance of the pipe line.

**3. Damages ⬥208(1)—Evidence held to warrant submission of question of damages in action for injury to cattle from drinking water out of creek into which defendant had negligently permitted oil to escape from pipe line.**

In an action against oil pipe line company for damage to plaintiff's cattle, caused by drinking water out of creek into which the defendant had negligently permitted oil to escape from pipe line, evidence that the cattle which drank the oil and were made sick, but did not die before the suit was brought, had no market value immediately· after drinking the oil, *held* to warrant submission of question as to damages as against contention that there was no proof of the market value of the cattle after they drank the oil.

**4. Waters and water courses ⬥77—Evidence as to lowering of pipe lines because of strain causing leak held admissible in action for damage to cattle from drinking water into which oil had leaked.**

In an action for damage to cattle from drinking water out of creek into which oil had escaped from pipe line because of defendant's negligent construction thereof, evidence as to lowering of the pipe line because it was undergoing a strain which caused the leak *held* admissible.

**5. Evidence ⬥117—In action for damage to cattle from oil escaping from pipe line, exclusion of testimony as to whether cattle coming from quarantine line were subject to splenetic fever held not error.**

In an action for damage to cattle from drinking water into which defendant pipe line company had permitted oil to escape from pipe line, exclusion of answer to question "whether cattle coming from the quarantine line are subject to splenetic fever when they get ticks on them" *held* not error, in the absence of testimony that any of plaintiff's cattle were from above the quarantine line.

**6. Waters and water courses ⬥77—Whether pipe line company was negligent in construction and maintenance of pipe line from which oil had escaped held for jury.**

In an action for damage to cattle from drinking water out of creek into which oil had escaped from defendant's pipe line, the question of whether defendant was negligent in the construction and maintenance of the pipe line *held* for the jury.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Suit by G. L. Dalton against the Prairie Pipe Line Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellant.

Penix, Miller, Perkins & Dean, of Graham, for appellee.

BUCK, J. G. L. Dalton, on September 24, 1920, filed this suit against the Prairie Pipe Line Company, a corporation, hereinafter called defendant. In his amended petition he alleged:

That defendant maintained and operated a pipe line through which it transported petroleum oil obtained in Eastland, Stephens, and Palo Pinto counties, and that said pipe line passed over and near lands leased by plaintiff and used as a pasture, specially about 800 acres known as the Cuteman pasture, situated about four miles northwest of the town of Palo Pinto, in Palo Pinto county. That plaintiff had been raising stock cattle and steers thereon, which fact was well known to the defendant. That through said premises ran Eagle creek, and that defendant's pipe line crossed said creek approximately 150 yards above and south of the premises leased by plaintiff. That defendant "negligently and carelessly and improperly constructed and put together its said pipe line over and across a large hole of water in said creek about 150 yards south of the premises occupied by the plaintiff. That in constructing its pipe line across said creek it failed to bury its pipe line under ground, and left same above the bottom of said creek, and that same became leaky where it crossed said creek underneath the water therein and above the bed thereof. That said pipe line was so constructed as to receive the force of flood water and to be weakened from natural weight and by pressure from oil passing through same, and in other ways unknown to plaintiff, and that said pipe line was negligently and carelessly permitted to emit oil therefrom and pollute the water of Eagle creek, which passed through plaintiff's said pasture, and that on account of the negligence of defendant in constructing and putting together said line it became broken and leaky, and permitted oil to escape therefrom

into Eagle creek aforesaid. That plaintiff called defendant's and its servants' and employés' attention ·to the leaky condition of said pipe, and the defendant knew at all times hereinafter mentioned of the leaky condition of the pipe, and knew that same was leaking and emitting oil from the month of March, 1920, until the month of August, 1920, but carelessly and negligently permitted said pipe line to continue to leak oil therefrom during all of said time into said creek."

He further alleged: That said oil so escaped, polluted, and poisoned the water and made it unfit for stock to drink. That he lost 16 head of steers from drinking said oil on the .water aforesaid, 15 of which were two year old steers of the reasonable market value of $75 per head, and the other was a three year old steer of the reasonable market value of $100. That 7 head of the two year old steers which also drank the water so polluted, about July 5, 1920, were sickened and poisoned to such an extent that they have not recovered therefrom, and are damaged in the sum of $40 per head. That 127 head of other cattle in his pasture drank said oil and were damaged thereby $5 per head.

The cause was tried before a jury on special issues, and the jury found:

(1) That defendant was negligent in the construction and maintenance of its pipe line across Eagle creek in such manner, as alleged by plaintiff, as to cause and permit crude oil to escape from the pipe line into the waters of said creek and pollute or poison its water.

(2) That said negligence was the proximate cause of the death and injury to plaintiff's cattle, as alleged in his petition.

(3) That plaintiff's damages were $1,140, for the 16 head of cattle killed, and $460 for those injured, but not killed.

The trial court entered a judgment for plaintiff for $1,600, and the defendant has appealed.

The evidence showed that the plaintiff during the early part of 1920 had under lease three pastures known as the Cuteman pasture, the Wade pasture, and .the Taylor pasture, that the lease on the Wade pasture, which lay between the other two, expired April 1, 1920, and that he removed his cattle therefrom some time the latter part of May of that year, but that the gates connecting the Wade pasture with the other pastures were left open a good deal, and that some of plaintiff's cattle got back into the Wade pasture after his lease had expired, and that on or about July 5, 1920, he noticed some of his steers in the Wade pasture drinking the water out of Eagle creek, upon which there was considerable oil, and that such steers, together with others not in the Wade pasture which also drank water with oil on it, died therefrom.

[1] Appellant's first proposition is that it is not liable for any cattle which were injured or died from drinking water with oil on it in the Wade pasture; that the cattle were trespassers in the Wade pasture, and that defendant owed no duty to the plaintiff arising out of the condition of the pipe line in the Wade pasture. In support of this contention, appellant cites McCutcheon v. Grosline, 39 Tex. Civ. App. 146, 86 S. W. 1044; Morrison v. Cornelius, 63 N. C. 346, 29 Cyc. pages 442 and 444; 3 Corpus Juris, page 151. These authorities hold that where plaintiff's animals are trespassers on defendant's premises, and are injured while thereon by falling into an excavation, a hole, or otherwise, defendant is liable only where it is shown that he was guilty of gross negligence. But the appellant in this case was not the owner of the Wade pasture, and is in no position to invoke the rule above noted. Only the one who had the right of control of the premises would be in a position to urge such defense. The assignment is overruled.

[2] It is urged in another assignment that the court erred in submitting to the jury the matter of maintenance of the pipe line in controversy, because there was no sufficient allegation of negligence in the maintenance to authorize such a submission. We think the allegations of negligence in the maintenance of the pipe line are sufficient to justify the introduction of testimony thereon and the submission of the question to jury.

[3] Under the third, fourth, and fifth propositions, and under assignment 3, complaint is made that the court erred in submitting issue No. 4 to the jury. This issue is as follows:

"What sum of money paid now do you find to be the damage to such of plaintiff's cattle, if any, as were made sick and ,injured by drinking water and oil from said ʻcreek, if you find that any of said cattle were made sick by drinking the oil and water from said creek?"

It is urged that there is no ·proper testimony in the statement of facts' establishing the measure of damages here inquired about. ʹThat as to the cattle which were alleged to be injured by drinking the oil on the water, it is urged that proof is necessary as to this ·character of damages to show the difference between what was the reasonable market value of the cattle immediately before they drank the mixture and immediately thereafter. Dalton's testimony showed that 35 head of his cattle drank the oil, 16 died before the filing of the suit, and 6 head died after the filing of the suit, and that none of the others "were any good hardly" thereafter. "Those I have there now haven't done any good at all; they wouldn't get fat." Testimony further showed that the reasonable market value at the time they drank the oil of the two year old steers was from $65 to $75, and the reasonable market value

of the three year old steers was from $80 to $100. Suppose the 6 which subsequently died from drinking the oil were all two year old steers, and taking the lowest valuation thereof these six would make $390. As to this amount of damages there can be no reasonable question. Plaintiff further testified that he did not sell any of the cattle which were sick. He testified:

"The 16 that died from the 35 left 19 head of steers. They were all sick, and some of them died. I lost 22 head in all. Six died after the 16 that died. As I told you, the balance of the 13 that lived never did any good at all. They have been in bad condition ever since, and haven't done any good at all. Some of them were 'reely' and down in the hips. They stayed in that condition until they died. Those that lived kind'a got over it. They got in that condition in June, I believe. I took them out of that pasture because the water was not fit for them to drink. * * *

"I alleged in my petition that there were 127 head of stock cattle that were injured by being sick from drinking the oil, but didn't die. I finally sold some of those cattle; about 60 head I think.

"Q. Then you didn't mean to tell counsel there was no market for them, and that you could not sell the cattle, because you did sell 60 head of them, didn't you? A. Yes, sir; late in the fall I did.

"Q. You didn't mean to say to Judge Penix that you could not sell those sick cattle, did you? A. I didn't sell any sick cattle, at all. * * * None of those that I sold had drunk any of the oil. I never sold any of my cattle that had been sick. * * * There was no market along about September, I believe it was, along about the 1st of September. I didn't try to sell any of the cattle in July and August, but I knew people would not buy my cattle in July and August, because they were sick. I didn't ask any body to buy them."

Elbert Dalton, son of plaintiff, testified:

"Those steers that drank this oil and did not die just got poorer and poorer all of the time, and they looked rough and bad, and they never did get over it; never did any more good. They were sick. They would just droop around. They lost flesh. I said the balance of that 35 head were affected. It affected them along the same lines, but not as bad. They were in the lower pasture at that time. We finally moved them all out as fast as we could, so they could not get to this oil. We put them where they could not get to this oil. It did damage them. I do know the market value at the time and place of all those 35 cattle, those two year old cattle, last year, at the time right immediately before they were injured. Those cattle would have sold for from $65 to $75 apiece, and the three year old cattle would have sold from $85 to $100 apiece. Immediately after these cattle were injured and before they improved any they did not have any market value at all, but some of them improved until they did have a market value in time, but soon afterward they did not have any market value at all."

We think this testimony sufficiently shows that the cattle which drank the oil and were made sick but did not die before the suit was filed had no market value immediately after they drank the oil. Hence any failure to prove the market value of such cattle after they drank the oil could not have affected plaintiff injuriously. C., R. I. & G. Ry. Co. v. Clark (Tex. Civ. App.) 166 S. W. 129; T. & P. Ry. Co. v. Webb (Tex. Civ. App.) 114 S. W. 1170. The assignments are overruled.

While W. S. Cox, an employé of appellant and chief engineer of the pumping plant at Bowie, and during the first part of the year 1920 assistant superintendent of appellant, was testifying for appellant, he was asked whether it was not true that he had lowered the pipe line which crossed Eagle creek, on the banks and beyond the banks of the creek, and whether he did not lower the line because, in his opinion, the same was undergoing a strain which caused the leak, and in this connection the witness was asked:

"Q. You lowered it over there to relieve whatever strain there was on it; that was the purpose of it, wasn't it? A. Well, we didn't know whether there was any strain on it or not.

"Q. Well, but if there was? A. If there was; yes, sir.

"Q. You did it for that purpose? A. Yes, sir."

The appellant objected to this testimony on the ground that it was an attempt to prove a different sort of negligence from that alleged in the petition. In the course of the testimony of this witness, he testified:

"We lowered that line because we thought possibly there might be a little strain on the line. We lowered it once before. We had lowered this identical line before. If that line had been left off the bottom of the creek it would have had more or less strain on it."

[4] Plaintiff alleged that defendant was negligent in constructing its pipe line across said creek, in that it failed to bury its pipe line in the ground and left same above the bottom of the creek, and that same became leaky where it crossed said creek, underneath the water therein and above the bed thereof; that said pipe line was so constructed as to receive the force of flood water and to be weakened from natural weight, and by pressure from oil passing through same in other ways unknown to plaintiff. We think from the facts here presented the court properly overruled the objection made.

[5] Under another assignment complaint is made because the trial court refused to permit Lon Weldon, a witness for defendant, to answer the question; "whether cattle coming from the quarantine line are subject to splenetic fever when they get ticks on them." As far as we have been able to determine from a careful examination of the statement of facts, there is no testimony in the record

of plaintiff's cattle coming from above the quarantine line. Dalton testified positively that all of the cattle he had were Palo Pinto cattle, below the line; that he never bought any cattle above the line, as he was afraid of them. Appellant cites no testimony in its brief, under this assignment which tends to show that any of plaintiff's cattle were from above the quarantine line. Hence we conclude that the court properly sustained the objection of the plaintiff that the testimony was immaterial and irrelevant.

[6] Under another assignment complaint is made that there was no competent proof before the trial court establishing negligence in the construction or maintenance of the pipe line, and that there was not sufficient allegation of negligence in maintaining the pipe line as to authorize the submission of such issue to the jury. Dalton testified:

"That pipe line looked to me like it was laid across that hold of water about two feet from the bottom of the creek. It was joined together in that hold of water. I should judge that pipe line was two or maybe three feet from the bottom of the creek, and I guess it is about three feet from the top of the water to the pipe line. That pipe line is just laid across the creek. There is nothing to support it whatever. I think they put clamps on it when they fixed it. Some oil did escape from that pipe line. That commenced along about the 1st of April, 1920, and kept getting worse all of the time, leaking worse, and finally they had to fix it. * * * About the 1st of July the company sent 15 or 20 men down there and they fixed it."

We have heretofore given the testimony of W. S. Cox to the effect that if the pipe line had been left suspended where it crossed the creek it would have had more or less strain on it. W. L. Tucker, construction foreman of the defendant, testified that they lowered the line when they fixed it; that they dug from underneath. We think both the allegation and evidence is sufficient to justify the submission of this issue.

All assignments are overruled, and the judgment is affirmed.