## TEXAS–LOUISIANA POWER CO. v. WEBSTER.

### No. 11114.

Court of Civil Appeals of Texas. Dallas. March 4, 1933.

Rehearing Denied April 22, 1933.

Jas. D. Buster, of Sherman, and Leachman & Gardere, of Dallas, for appellant.

Hubert Bookout and Randell & Randell, all of Sherman, for appellee.

LOONEY, Justice.

Doc Franklin Webster was killed by coming in contact with appellant's transmission line that was broken down, by a stroke of lightning, at a point two or three miles south of Bells, in Grayson county. This suit was instituted by his father, R. B. Webster, for himself and on behalf of the other beneficiaries, to wit, Mrs. R. B. Webster, mother, Vera Webster, widow, and Stella May Webster, posthumous daughter.

The material facts are these: Doc Webster, with his wife Vera, Tom Webster, a brother, and Bowen Daniels, a brother-in-law (wife's brother), for about two weeks prior to the tragedy mentioned, had been traveling in an automobile through the central and northern portions of Texas hunting work, but, on account of excessive rains, failed to secure same, and were returning to West Texas, where they resided, reaching Bells in Grayson county Monday night May 13, 1929, intended to go west through Sherman, but, because of damaged roads, detoured south through Whitewright, leaving Bells near 11 o'clock p. m., and had reached the corner of the Carter farm when the car ceased to operate and stopped. The Carter farm was rented to Mr. Mack Atnip of Bells, but, at the time, was resided upon and cultivated by a negro named Frog Jackson. When the car stopped, it was raining some, was dark, and the ground very muddy. Appellant's power line is constructed through this farm, from the north, on a southwesterly course. Early that morning, between 6 and 7 o'clock, during a severe electrical storm that prevailed over that section, lightning struck and broke down two adjacent poles of the transmission line, causing the wires to sag, at the lowest point, about 3 feet above the ground, but the insulation and attachment of wires to crossarms were not disturbed. When the car stopped, the parties thought they were out of gasoline, so Tom Webster and Bowen Daniels took an empty can, left Doc Webster and wife, Vera, in the car, and started on a hunt for gasoline. They entered the Carter inclosure from the highway, crossed over a narrow lane into a field recently planted to cotton, passed along the side of the lane fence around to a barn where, as indicated by the circumstances, they procured gasoline from an automobile belonging to the negro, and, returning to their car, evidently became confused, took the wrong direction, going northeast through the cotton land, instead of southeast, contacted with the sagging transmission line of appellant and were killed. When the brother and brother-in-law left Doc and his wife to go after gasoline, Doc sat under the wheel and his wife by his side, and, being worn and tired from travel, she reclined with her head in his lap and was soon asleep, but, aroused by her brother's voice calling "Doc," she saw a long blue flame, heard a noise as of something frying, again heard her brother's voice saying "Hurry up," saw another blue flame, and heard the same frying sound. In answer to the calls of Bowen Daniels, Doc left his wife in the car and went in the direction of the voices and flames, and within a short time the witness saw the same manifestation of flame and heard the same frying sound as before. The bodies of the three young men were found next morning under the sagging transmission line at a point about 200 yards from the car and from 100 to 150 yards down in the field from the house. Other pertinent facts will be mentioned in the course of the discussion.

The grounds of negligence specified are: (1) That appellant violated article 1436 in having its electric line at a height less than 22 feet above the ground; (2) that it caused and permitted its wires to sag and fall and remain within 3 feet of the ground; (3) that it failed to place a watchman at such place to warn persons of such condition; (4) that it failed to cut off the current of electricity from said lines; (5) that it failed to keep the wires from sagging and falling near the ground in a position to strike and come in contact with persons who might pass or be about it.

Appellant's answer contains a general demurrer, general denial, plea of unavoidable accident, plea that the accident and injury complained of were the result of an act of God, to wit, a stroke of lightning, also that the negligence of deceased was a proximate or contributing cause of the accident and death, and a plea that deceased was a trespasser upon the premises at the time. The demurrer was overruled, the case was submitted to a jury, and, after proper definitions of negligence, ordinary care, and proximate cause, the issues of negligence submitted were: The act and conduct of appellant in permitting its wires to remain low and near the ground; in failing to have a watchman at the time and place in question to prevent any one from coming in contact with the low sagging wires, and in keeping its wires charged with a powerful current of electricity while low and sagging near the ground. Each issue was found by the jury to be actionable negligence, and, further, that Doc Webster was not guilty of negligence in going into the field at the time and place in question and in the manner that he did. The

jury assessed $10,000 damages in favor of Vera Webster, the widow, $10,000 in favor of Stella May Webster, the posthumous child, $2,250 in favor of Mrs. R. B. Webster, mother, and $750 in favor of R. B. Webster, father of deceased. Judgment was rendered accordingly, from which this appeal is prosecuted.

Ordinarily we would not feel called upon to discuss each of the numerous propositions, in which appellant translates the assignments relied upon for reversal, but, in deference to the elaborate brief and exhaustive discussion of these questions by appellant's counsel, each proposition will be discussed.

Appellant does not contend that the findings of the jury are unsupported by evidence, but, in proposition 1, urges that the court erred in overruling its general demurrer to appellee's petition, because its allegations reveal the fact that deceased was a trespasser upon the premises at the time of losing his life, hence appellant owed him no duty; and, in propositions 2 and 3, contention is made that the court erred in refusing, on request, to instruct a verdict in its favor, because the undisputed evidence shows that, at the time deceased met death, he was trespassing upon the premises. These propositions present appellant's main contention.

A power corporation, being quasi public in character, is charged by statute with the performance of certain general duties. Authority is conferred upon these corporations to generate, transport, and sell electric current, to construct, maintain, and operate plants, substations, machinery, apparatus, pipes, poles, devices, and such arrangements as may be necessary to operate lines between different points in the state, and to own, hold, and to use such lands, right of way, easement, franchise, buildings, and structures as may be necessary (article 1435, R. S. 1925), and to acquire, by condemnation, lands, right of way, easements, and property, and erect its lines over and across any public road, railroad, interurban or street railroad, the right of way thereof, canal or street, etc., specially providing, however, that "such lines shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet. * * *" Article 1436, R. S. 1925.

■ Obviously, one of the purposes of the quoted provision of the statute is to protect from injury all persons while using the premises in a manner consistent with the easement rights of the power company. What are these rights? The generally accepted doctrine is that the owner of the fee or proprietor of the premises has dominion over and the right to use the land in a manner consistent with the reasonable enjoyment of the easement by its owner. 15 Texas Juris. p. 802, § 59. See annotations 46 A. L. R. 1463–1465. Appellant acquired the right of way through the Carter farm by a deed from the owner, granting the right of ingress and egress over adjacent lands to or from said right of way for the purpose of constructing, reconstructing, inspecting, controlling, hanging new wires on, maintaining, and removing said line and appurtenances, the right to relocate along the same general direction of said line, etc. Neither under this express grant nor under the statute did appellant have the right to prevent the owner of the fee, or proprietor, from using the ground under the power line so long as it was not put to a use inconsistent with the reasonable enjoyment of the easement. We do not think it can be said that, in attempting to pass under appellant's power line at the time and place in question, deceased was interfering with or trespassing upon any right of the appellant, in fact, if deceased was trespassing, it was upon the rights and premises of the owner or tenant.

■ If it be conceded that, as to the owner or tenant of the premises, deceased was a trespasser, would that fact relieve appellant from liability for injuries and damages resulting from its negligence? We do not think so. In Oil Belt Power Co. v. Touchstone (Tex. Civ. App.) 266 S. W. 432, 439, it was held that the company was liable for the death of a boy who went to the top of a tank, over which the company maintained uninsulated wires, and was electrocuted. The court said: "It cannot be doubted that it is negligence to maintain an uninsulated wire highly charged with electricity, and without any warning of danger, in any place where persons may reasonably be expected to come in contact therewith. * * * If appellant could reasonably have anticipated some injury to some person situated as was the deceased, who might be expected to probably go upon the tank under like circumstances, then it owed the duty to exercise ordinary care to avoid such injury. We are of the opinion, further, that the evidence was sufficient to sustain the finding of the jury upon that issue. * * * It is to be noted that, while appellant had the lawful right to maintain its wires strung through the air, that right did not include the right of possession and control over the water tank and the lease on which the same was erected. And the act of the deceased in placing himself in dangerous proximity to the wires was not a trespass upon appellant's right to maintain them at the place where they were placed, nor inconsistent with that right. If, as testified to by plaintiff, the boy was told by the superintendent of the oil lease to go upon the tank to look for his cattle, then it must follow that he was rightfully there, and not a mere trespasser." A similar question arose in Prairie, etc., Co. v. Dalton (Tex. Civ. App.) 243 S. W. 619, a suit against a pipe line company. In this case, plaintiff

906

sued for the value of cattle that died from drinking creek water mixed with oil that defendant negligently permitted to escape from its pipe line. At the time the cattle drank the polluted water, they were trespassing in the pasture through which the pipe line ran. In this situation, the pipe line company contended that it owed plaintiff no duty, hence was not guilty of negligence. This the Fort Worth court denied, saying: "But the appellant in this case was not the owner of the Wade pasture [upon which the cattle were, at the time, trespassing], and is in no position to invoke the rule above noted. Only the one who had the right of control of the premises would be in a position to urge such defense." Page 620 of 243 S. W.

These cases are nearest in point of any from our courts, but there are many decisions, in point, by courts of other states. The Supreme Court of Vermont in Humphrey v. Twin State Gas, etc., Co., 100 Vt. 414, 139 A. 440, 444, 56 A. L. R. 1011, 1020, held that an electric power company causing injury to a trespasser on the land of another by negligently permitting its transmission wires to come in contact with a wire fence upon the land, cannot escape liability on the ground that the injured party was a trespasser. In reaching this conclusion, the court overruled two of its former decisions (Fay v. Kent, 55 Vt. 557, and Kennedy v. Morgan, 57 Vt. 46), using the following language in point: "Electricity has come to be a necessary factor in almost all lines of activity. Its usefulness should not be impaired or curtailed. But it is highly destructive when it escapes control; its capacity for harm is but little reduced by distance; it is invisible and undiscoverable; it strikes instantly and without warning. We deem it of the highest consequence, especially in a rural state like ours where hunters, fishermen, and others roam the woods when lawful, almost at will, and where high-tension electric lines run in every direction, and wire fences are in common and increasing use, that those dealing in such a deadly agency should be accountable to all whose likelihood of injury could reasonably be foreseen." In Kribs v. Jefferson City, etc., Co., 199 S. W. 261, 263, a similar question arose, and was disposed of by a Court of Appeals of Missouri as follows: "The evidence shows that persons were frequently through the place. At one point the wire fence had been propped apart and cushioned with gunny sacks to let persons through. Boys frequently were in there hunting for pawpaws and sassafras and on fishing trips. This was shown to be of such an extent, and had existed for such a number of years prior to the happening, as that the likelihood of persons being at that place made it incumbent on the defendant to maintain its line in a reasonably safe condition." This was said where the facts showed that boys,

one of whom was killed when he touched a guy wire dangling from a charged power wire, were in the pasture through which the power line runs without authority from the owner. To the same effect, see Grady v. Louisiana, etc., Co. (Mo. App.) 253 S. W. 202; Guinn v. Delaware, etc., Co., 72 N. J. Law, 276, 62 A. 412, 3 L. R. A. (N. S.) 988, 111 Am. St. Rep. 668; Boutlier v. Malden, etc., Co., 226 Mass. 479, 116 N. E. 251, Ann. Cas. 1918C, 910; Ferrell v. Durham, etc., Co., 172 N. C. 682, 90 S. E. 893, L. R. A. 1917B, 1291; Stedwell v. Chicago, 297 Ill. 486, 130 N. E. 729, 17 A. L. R. 829; Nelson v. Branford, etc., Co., 75 Conn. 548, 54 A. 303; Lipovac v. Iowa, etc., Co., 202 Iowa, 517, 210 N. W. 573; Puchlopek v. Portsmouth Power Co., 82 N. H. 440, 136 A. 259; Fitzpatrick v. Penfield, 267 Pa. 564, 109 A. 653; Birmingham, etc., Co. v. Cockrum, 179 Ala. 372, 60 So. 304; Cox v. U. S. Coal & Coke Co., 80 W. Va. 295, 92 S. E. 559, L. R. A. 1918B, 1118; Nenstiehl v. Friedman, 90 Misc. 368, 153 N. Y. S. 120; Bottum's Adm'r v. Hawks, 84 Vt. 370, 79 A. 858, 35 L. R. A. (N. S.) 440, Ann. Cas. 1913A, 1025. Also see cases, annotation, 56 A. L. R. pp. 1030–1033.

▇▇▇ The cases chiefly relied upon by appellant, in support of its contention that deceased was a trespasser and that no duty was due him, are Brush, etc., Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898; City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843, and Burnett v. Ft. Worth, etc., Co., 102 Tex. 31, 112 S. W. 1040, 19 L. R. A. (N. S.) 504. These cases originated before the advent of power companies in this state, and prior to the enactment of statutes regulating their operation, besides, are not in point, as the undisputed facts here show that deceased was not a trespasser, but, to say the least, was simply a licensee; hence the case is not within the doctrine announced in the Brush, Pitts, and Burnett decisions.

The evidence is not disputed that deceased entered the premises in response to a distress call from Bowen Daniels, his brother-in-law, which relieves him from any imputation of trespassing; besides, the evidence is undisputed that people were accustomed to enter and cross these lands ad libitum; furthermore, courts will take cognizance of a fact, within the knowledge of everybody, that in the rural sections of our state there exists a communal custom authorizing, or at least tolerating, without let or hindrance, the entry and passage of persons through and over the inclosed pasture and cultivated lands of any one; in fact, the existence of this custom was impliedly recognized by the Legislature in the enactment of articles 1377, 1388, Penal Code, making it unlawful to enter upon the inclosed lands of another, under conditions and for purposes that exclude the condition and purpose under and

for which deceased entered the premises in question. So, by every test, we conclude that deceased was not a trespasser upon the premises when killed, but his status was that of a licensee.

■■ There is no material difference between the status of one tacitly permitted to enter upon the premises of another and one expressly permitted or invited, for, in either case, it would not show a due regard for the rights and safety of others to classify such as a trespasser. While it is true that a licensee takes the premises as he finds them, yet it is equally true that, where a new peril is presented from changed conditions, as in the instant case, an active duty devolves upon the owner or proprietor to exercise reasonable care to safeguard a licensee from the new or sudden peril. This doctrine is sustained by the following authorities: Felton v. Aubrey (C. C. A.) 74 F. 350; Westborne Coal Co. v. Willoughby, 133 Tenn. 257, 180 S. W. 322; Terre Haute, etc., Co. v. Sanders, 80 Ind. App. 16, 136 N. E. 54; Locke v. Payne, 81 N. H. 266, 124 A. 668; Romana v. Boston, etc., Co., 226 Mass. 532, 116 N. E. 218; 45 C. J. pp. 802, 803 (§ 203) 6. Therefore, even if appellant be permitted to say that, as to it, deceased was a licensee upon the premises, still, in view of the dangerous condition of its power line, caused suddenly by lightning, it should have exercised reasonable care to repair after notice of the dangerous situation. This duty appellant failed to discharge.

■ Complaint is made, in propositions Nos. 34 and 35 that, the court erred in submitting, over timely objections, issues Nos. 1 and 2, as follows: "Question No. 1. Was the act and conduct of the defendant company in permitting its wires to remain low and near the ground, if they did so permit, negligence, as that term has been defined to you? Question No. 2. Was such negligence on the part of defendant company, as you have found in answer to question No. 1 if you did so find, a proximate cause of Doc Webster's death?"

The objections urged to these issues are that they are immaterial, in that deceased was a trespasser and that appellant owed him no duty, and, further, that the issues are upon the weight of evidence, in that they assume that, after knowledge or notice, appellant permitted its wires to remain in a broken-down condition.

We think the issues material, in fact, are of the very essence of the controversy. It is not disputed that between 6 and 7 o'clock Monday morning, May 13, 1929, during an electrical storm that prevailed over that section, lightning struck down two of appellant's poles, located in the cotton field of the negro Jackson, permitting the wires, heavily charged with electricity, to sag near the ground, and that they remained in that condition until after the bodies of the young men were discovered Tuesday morning; that George Ferguson, appellant's agent at Bells, to whom patrons reported their troubles for remedying, was given a full report of the damaged condition of the power line, by J. A. Childress, a rural mail carrier, about 10 a. m. Monday morning, following the storm. No inspection of the line followed, nor was anything done towards repairing same until after the bodies of the young men were discovered.

· Article 1436, R. S., required appellant not only to construct, but to maintain, its lines 22 feet above the surface of the ground, and it was its duty to exercise reasonable care to remedy dangerous conditions, after knowledge or notice, to prevent injury to those who might be expected to use the premises, or pass under said lines. 16 Tex. Juris. pp. 237, 239. The duty of inspection and maintenance is a corporate duty and cannot be shifted or transferred to agents or employees. 16 Tex. Juris. p. 241, § 10; Jacksonville, etc., Co. v. Moses, 63 Tex. Civ. App. 496, 134 S. W. 379, 385 (writ denied); Arkansas, etc., Co. v. Adcock, 184 Ark. 614, 43 S.W.(2d) 753. In the Jacksonville Case, Judge Hodges said: "Among the primary duties of a corporation operating an electric light plant and using wires for the distribution of a dangerous current of electricity is that of exercising a proper degree of care, not only in the erection of its lines and instrumentalities, but in maintaining them thereafter in a reasonably safe condition. The performance of the latter obligation carries with it another equally absolute—that of making such an inspection of the condition of its property as may be practicable and reasonably essential to the accomplishment of that end. By this means alone can the corporation vouchsafe to the public that degree of protection which the law requires it to render. [Citing authorities.] The author last referred to says: 'A proprietor dealing with so dangerous and deadly an agency as electricity is bound to a continuous inspection, to the end of seeing that his wires are properly insulated, and to the end of discovering any breakage in them, so as to remove the current, or otherwise render them harmless at as early a period as is consistent with a very high degree of care and diligence. The obligation of exercising a degree of care proportionate to the danger obviously demands nothing less than this. Such a company will hence become liable to pay damages for an injury to a person proximately resulting from its failure to remove, after notice, actual or implied, a wire which had broken from its poles.' The fact that such duties must be discharged through the agency of servants and employees does not affect their absolute character. The corporation cannot shift its personal obligations. [Citing numerous authorities.]"

As shown above, the statute (article 1436), requires power companies to maintain their

transmission lines at least 22 feet above the surface of the ground; failure to comply with this provision is negligence per se, but, to be actionable, a causal connection must be shown to exist between the unlawful act and the injury. In the instant case, a vis major (lightning) struck down two poles, causing wires, heavily charged with electricity, to sag near the ground, with which deceased contacted and was killed; so actionable negligence in the instant case was the failure of appellant to discover the broken-down condition of its line and repair same, or failure to repair, after receiving notice of its damaged condition. It was not essential that appellant should have visualized the precise situation, but it should have anticipated that persons were liable to enter and pass over the premises and under the transmission lines at any time. The standard of care required of appellant is not that of one uninformed as to the nature and dangers of electricity, but is the standard of one who, possessing such knowledge, undertakes its control and distribution. Texas, etc., Co. v. Armstrong (Tex. Civ. App.) 37 S.W.(2d) 294. In view of the undisputed facts, the authorities cited, and reasons stated, we hold that the court did not err in submitting the issues under consideration.

In propositions Nos. 36 and 37, contention is made that the court erred in submitting, over objections, the alleged negligence of appellant, in failing to have a watchman at the place where the line was broken to prevent any one from coming in contact with same, and, in propositions Nos. 38 and 39, that the court erred in submitting, over objections, the alleged negligence of appellant in keeping its wires charged with electricity during the time they were sagging near the grounds; the objections being that the submissions are immaterial and on the weight of evidence.

It is undisputed that, after the electrical storm, early Monday morning, and before the discovery of the bodies of the dead, no inspection of its transmission line was made by appellant, and, notwithstanding actual notice of the broken-down condition of its line was received by appellant, through George Ferguson, its agent at Bells, no effort was made to repair the damage, or to prevent any one from contacting therewith, and, in the meantime, the wires remained heavily charged with electricity. These issues are material, and the facts supporting same are, in effect, undisputed, so it is our opinion that the court did not err in giving same over the objections.

Contention is made in propositions Nos. 13 and 14 that, the court erred in submitting, over objections, special issue No. 9, on the issue of contributory negligence; the objections being that the charge was general and failed to segregate and submit separately issues as to various acts of deceased.

Appellant pleaded contributory negligence in paragraph 14 of its answer, as follows: "Defendant further says that at the time Doc Franklin Webster sustained injuries and immediately prior thereto, the said Bowen Daniels, Tommie Webster and Doc Franklin Webster were each guilty of negligence, which was the sole, proximate cause of their several and collective injuries, but if not, were at least causes that caused or contributed to cause their injuries, severally and collectively." The court submitted the issue in the following language: "Was Doc Webster guilty of negligence in going into said field at the time and place in question in the manner that he did?" To which the jury answered, "No." Thus it is obvious that the submission is no more general nor less specific than the plea. However, in the statement supporting the contention, found at pages 151 and 152 of appellant's brief, certain allegations as to specific acts of deceased, in paragraph 10 of appellant's answer, are set out as constituting a part of its plea of contributory negligence. These allegations constitute no part of the plea of contributory negligence, but were pleaded as a basis for proof that deceased and the other young men were, at the time of being electrocuted, trespassers upon the premises. So, eliminating, in this connection, allegations that constitute no part of the plea of contributory negligence, the issue as pleaded being general, the court did not err in submitting same in general terms.

But was the issue of contributory negligence raised by the evidence? We do not think so. The evidence is to the effect that, at the time Tommie Webster and Bowen Daniels started on the hunt for gasoline, Doc Webster, deceased, and his wife, Vera, were left seated in the car, standing in the public road, Doc Webster was seated under the wheel and Vera by his side. Being tired, she soon fell asleep, but was awakened by the voice of her brother Bowen calling "Doc"; she saw a light, a long blue flame of fire, heard a frying sound, and her brother's voice again saying "hurry up," and in a short time saw another flame and heard the same frying sound. At this juncture Doc Webster left the car, in answer to the call for help, and went in the direction of the noise and flame; later, the witness testified, that she saw at the same place another flash or flame, and again heard a frying sound. These unusual sights and sounds—the flame accompanied by noise as of something frying, the urgent call for Doc to hurry—indicate that the two young men were in distress; so, under the circumstances, deceased could not be charged with contributory negligence in exposing himself to danger of injury in going to their rescue. 45 C. J. p. 966, § 520 (5); 20 R. C. L. p. 131, § 108, and authorities cited.

In propositions Nos. 15, 16, 17, 18, 19, 20, 21, 22, 26, 27, 28, 29, and 30, appel-

lant contends that the court erred in refusing requested special issues in regard to the negligence of deceased, and the other two, based upon certain specific acts of said parties. These issues were correctly refused, because the particular acts involved were not pleaded defensively as constituting contributory negligence, but in order to show that the parties were trespassers upon the premises, and furthermore because the issues were not warranted by the evidence. Also in proposition No. 23 appellant complains of the refusal of the court to submit an issue as to the existence of a joint adventure by deceased and the other two; in propositions Nos. 24 and 25, complaint is made that error was committed in refusing special issues presenting the question whether deceased lost his life as the result of an act of God; and in proposition No. 12 complaint is made that the court erred in refusing, on request, to submit the issue of unavoidable accident.

The special issues mentioned in propositions 12, 23, 24, and 25 were correctly refused, because not supported by evidence. The issues involved in the propositions beginning with the one mentioned in proposition No. 12 and ending with the issue mentioned in No. 30, if given, would have confused the jury, and in our opinion, fall under the condemnation pronounced by Judge Denman in Missouri, K. & T. R. Co. v. McGlamory, 89 Tex. 638, 35 S. W. 1058, 1059, where he said that "defendants had the right to prepare and demand the giving of a charge requiring the jury to find whether the evidence established the existence of any specified group of facts which, if true, would in law establish such plea. * * * This rule does not permit a litigant to annoy the court or confuse the jury by special charges upon the weight of, or giving prominence to, each circumstance introduced tending to support his cause of action or defense, but requires him, at his peril, to present in such special charge, for the consideration of the jury, a fact or group of facts which, if found by them, from the evidence, to be true, establishes, in law, some material issue presented by the pleading."

Propositions Nos. 4, 5, 6, and 7 present the alleged error of the court in excluding evidence offered by appellant to show that deceased was a trespasser upon the premises when killed. We hold that, even if deceased was a trespasser, appellant cannot escape the consequences of its negligence by reason of such fact; therefore overrule these contentions.

In propositions Nos. 8 and 9, contention is made that the court erred in admitting, over objection, and in refusing to strike out, the testimony of D. F. Cobb, offered by appellees to prove that George Ferguson was appellant's agent at Bells upon whom notice of the damaged condition of the transmission line was served; and in proposition No. 10 complaint is made that the court erred in admitting, over objection, and in refusing to strike out on request, the testimony of J. A. Childress, a rural mail carrier, who testified that he discovered the broken-down condition of appellant's transmission line early Monday morning, and that about 10 o'clock a. m. made full report of same to George Ferguson. This evidence was of a most material nature and admissible; hence the court did not err in the rulings under review.

In proposition 11, appellant assigns error on the action of the court in refusing to permit appellant to ask Vera Webster the following question: "After you and Doc were married, Mrs. Webster, did he ever earn more than enough to support the two of you?" The objection made and sustained was that the question called for a conclusion. The court qualified the bill, saying "that there was no showing made as to what the answer of the witness would have been to the question propounded." We do not think there was error in this ruling, appellant cross-examined the witness fully in regard to the labors and life of deceased after their marriage, and the answer sought would unquestionably have been a conclusion; besides, as appellant does not contend that the verdicts are excessive, the writer is of opinion that, even if error was committed in the ruling, it was harmless.

Complaint is made in proposition No. 31 that the court erred in omitting to define the phrase "natural and continuous sequence," employed in defining "proximate cause," and in proposition No. 33 it is urged that the court erred in failing to define the phrase "causal connection," as used in the court's definition of "independent cause."

In the main, our court procedure is conducted in language easily understood by the average juror; relatively few words or phrases are charged with an occult or legal meaning beyond the reach of the average. We think the phrases in question, and words constituting same, are understandable to the average juror, and that the court did not err in complicating its charge with unnecessary and useless definitions.

In proposition No. 32, complaint is made that, in defining "proximate cause," the court failed to tell the jury that there might be more than one proximate cause.

The death of Doc Webster resulted either from the negligence of appellant, or from his own negligence, these issues were submitted, and, as the evidence contains no suggestion of the existence of any other proximate cause, the court did not err in the respect mentioned.

Appellant contends in propositions Nos. 40,

41, and 42, that the court erred in overruling its objections to issues submitted on the measure of damages. These assignments are overruled. The writer is of opinion that these questions are immaterial, in that, even if the court erred in giving the charges, the same should be considered harmless, as appellant does not contend that the damages assessed by the jury are excessive.

Failing to find reversible error, the judgment of the court below is affirmed.

Affirmed.

### On Rehearing.

As shown by the original opinion in this case, we overruled appellant's assignments based upon the actions of the trial court in refusing requested issues on contributory negligence, on the theory, among others, that the plea of contributory negligence, being general in terms, not specifying the particular acts of deceased constituting contributory negligence, the submission of the issue, in general terms, was sufficient.

The correctness of this statement of the rule is challenged by appellant, and, after investigating the matter, we have concluded that we erred in the holding. In Gulf, C. & S. F. R. Co. v. Mangham, 95 Tex. 413, 418, 67 S. W. 765, the court had before it on certificate the following question: "Question. Where the facts in evidence relied on by the defendant to constitute contributory negligence are not specifically pleaded, and the court fails to group the facts, but charges in general terms on contributory negligence, is the defendant entitled to have given a special charge, grouping the facts, and applying the law thereto?" The court answered the question as follows: "If the facts grouped in the appellant's charge were admissible under the plea of contributory negligence, and the charge was correct, it should have been given." This rule has been since followed in a number of cases, among others Stewart v. Galveston, H. & S. A. R. Co., 34 Tex. Civ. App. 370, 78 S. W. 979; St. Louis S. W. R. Co. v. Rose (Tex. Civ. App.) 93 S. W. 1105.

However, the error in the ruling above mentioned is immaterial, as we also held that the issue of contributory negligence was not raised by evidence, in that deceased entered the premises on the occasion in answer to a distress call from his brother-in-law; therefore could not be charged with negligence in exposing himself to danger.

But, aside from these considerations, it is undisputed that deceased was traveling through the community a total stranger, was ignorant of the condition of the power line, or even of its existence at that place, consequently, was utterly ignorant of the danger attendant upon entering and passing through the cotton field.

Contributory negligence can only be predicated upon failure to use reasonable care for one's own safety to avoid the thing causing injury. If ignorant of the danger, and not being required to anticipate its presence, as in the instant case, no duty existed to exercise such care; hence, for this additional reason, the issue was not raised by evidence.

We have duly considered all of appellant's grounds for rehearing, and, discovering no reason why our original opinion should be disturbed, the motion is overruled.

BOND, Justice.

I have reached the conclusion that appellant's motion for rehearing should be granted, and this cause reversed and rendered. On the original submission I expressed the opinion, which has since become a fixed conclusion, that the record discloses that the deceased was, at the time of his death, a trespasser, entered upon the property of another without any right, but merely for his own purpose of purloining gasoline from the owners of the premises; that the owners of the premises, nor the one with contractual rights thereon, owed him any duty except to not intentionally or willfully injure him.

A person may use his property or contract in reference thereto as he pleases, so long as he does not willfully or wantonly injure another, unless he owes some duty to the trespassing public. As was said by the Supreme Court, in Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S. W. 756, 757, 8 Am. St. Rep. 611: "The owner of real property is entitled to the exclusive use and enjoyment of the same, and is not liable to others for injuries occasioned by its unsafe condition when the person receiving the injury was not at or near the place of danger by lawful right, and when the owner has neither expressly nor impliedly invited him there, or allures him by attractions or inducements exhibited or held out in some way calculated to lead him into danger without giving notice of the peril to be avoided. * * * The doctrine is established * * * that a trespasser or mere licensee who is injured by any dangerous machine or contrivance on the land or premises of another cannot recover damages unless the contrivance is such that the owner may not lawfully erect or use, or when the injury is inflicted willfully, wantonly, or through the gross negligence of the owner or occupier of the premises."

In 1922, J. M. Carter, the owner in fee of the premises on which deceased met his death, executed to one H. Broadhead an easement, or right of way, for an electric transmission and distributing line, consisting of a variable number of wires and necessary or desirable appurtenances, including towers or poles made of wood, metal, or other mate-

rial, on and across the owner's premises. The rights under the easement, in due course, became appellant's property. It was acquired by purchase without the intervention of the power granted to such corporations by force of the statute of eminent domain or condemnation. Its contractual rights on and across the premises were independent of and not controlled by the regulatory requirements of article 1436, R. C. S. 1925, that "such lines shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet. * * *" The rights and powers thus granted to appellant in the construction of its line are controlled by the covenants expressed in the easement contract voluntarily entered into by the contracting parties. Appellant had the right and power of condemnation, had it seen fit to avail itself of the privilege, to enter upon the property and acquire the rights and powers perforce of the statute, in which event it would have been compelled to maintain its poles at the height required by law.

Article 1436, supra, has no application to the facts of this case. Appellant acquired no right or power under the statute, had not acquired its easement and right of way through eminent domain or condemnation, and the wires in question were not strung on a highway or road at the point of injury. Thus appellant's liability for any act of omission or commission is dependent upon the common-law rules of negligence, and not negligence per se.

The deceased, Doc Franklin Webster, voluntarily and without invitation, express or implied, and without inducement, allurement, or promise of safety, made his way on private property, in the dark of night, with absolute lack of familiarity with the premises that he was invading. Can it be said that the owner of the premises owed him any duty? Can it be said that the owner's grantee of the easement right (appellant) owed him any duty? I think not, except to refrain from willfully and wantonly injuring him. The deceased was a trespasser on the premises.

The original opinion herein cites the case of Oil Belt Power Co. v. Touchstone, 266 S. W. 432, 439 (Court of Civil Appeals). In that case, the possessor of the land constructed an elevated water tank. Across the top of the tank there was a plank called a "runway," and attached to the side of the tank was a ladder, thus provided to enable persons to go to the top of the tank and onto the plank extending across it. The water tank had been in such use for about three years before the electric wires were strung above it. The deceased went up the ladder onto the plank and under the electric wires and was killed. The superintendent in charge of the premises had instructed the deceased to go on the water tank in order to find some cattle belonging to the superintendent, his employer. Thus it would appear that the deceased was on the premises, and at the point of his injury, in the interest of one who had the right thereon. The court said: "If, as testified to by plaintiff, the boy was told by the superintendent of the oil lease to go upon the tank to look for his [the superintendent's] cattle, then it must follow that he was rightfully there, and not a mere trespasser." In the instant case, there was no authority given by the owner of the premises; the owner had no knowledge of the deceased's act, and the deceased was acting contrary to such owner's or occupant's interest, purloining gasoline from his automobile. The deceased, in the middle of a rainy night, went across a muddy, freshly plowed cotton field, where there was no path and nothing to warn appellant that any one might be there, nor could it have been reasonably anticipated by a person exercising ordinary care that a person would be at such place at such time.

The original opinion also cites the case of Prairie Pipe Line Co. v. Dalton (Tex. Civ. App.) 243 S. W. 619. The cattle injured in that instance had previously been pastured on the premises in question, and had gained admission to said premises by means of gates which had been left open; the leakage in the pipe line, which caused pollution of the pond, had been going on for a period of several months, and thus caused the death of the cattle. The trespassing of cattle can hardly be compared with the trespassing of man. The pipe line company could well have anticipated that cattle would go to their accustomed range and place of drink, and should be fenced out rather than fenced in. As was said in Haralson v. Suzuki (Tex. Civ. App.) 300 S. W. 190, that the owner of a garden plot could not recover for damages done by trespassing mules, without showing that the crops were on land included by a lawful fence, or that the premises were in a territory where such stock were not permitted to run at large.

In view of the holding of our Supreme Court, in City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 51, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843, and Burnett v. Fort Worth Light & Power Co., 102 Tex. 31, 112 S. W. 1040, 19 L. R. A. (N. S.) 504, cited with approval in innumerable cases, there is no distinction between the owners of the premises and one who has lawful possession thereof as to the duty owed trespassers. In the Pitts Case, a city policeman climbed at night onto the roof of a privately owned building, to detect unlawful gambling in an adjoining house, and was injured by contact with an improperly insulated electric wire maintained by the city. The court said: "Plaintiff [Pitts] was invested with none of the legal

rights which pertained to the ownership of the building or an interest therein. He went upon it for purposes of his own, and not in the interest of the owner. If he was not a trespasser, he certainly was no more than a licensee under an implied license. If he be regarded as such a licensee, this would not clothe him with any legal right in the use of the building. It would merely relieve him of any imputation of being an unauthorized trespasser. Though his act be regarded as lawful, or even praiseworthy, he nevertheless was using the premises of another for purposes of his own, without any legal right in himself which entitled him to object to the condition in which the owners maintained them." And so, in the Burnett Case, supra, a boy of 12 years, trespassing upon the roof of a building, to which he gained access by a stair and trapdoor, was killed by coming in contact with a wire which had become charged with electricity, through the neglect of the light and power company to comply with the penal ordinances of the city, respecting the insulation of their wires. The court held, in effect, that the negligence of the defendant light company must be a default in some obligation to the injured person, whether it consist in the omission of a statutory duty, or one required by the common law. In going out on the roof of the building, the boy was an intruder or trespasser, and from all of the circumstances the light company could not have reasonably anticipated that some trespasser would go out on the roof and come in contact with the electric wires.

It might be conceded, as recited in the original opinion, that "these cases [Pitts and Burnett] originated before the advent of power companies in this state, and prior to the enactment of statutes regulating their operation," in so far as rural districts are concerned, but the advent of power companies and regulatory measures as to their operation were in esse in cities and towns at the time of these decisions. The rule announced in these cases is applicable alike to reciprocal duties and obligations imposed upon trespassers and public service corporations, whether in urban or suburban places.

In the instant case, appellee contends that deceased entered the premises in response to distress calls from his brother and brother-in-law, and appellant contends that the three men went on a joint enterprise to purloin gasoline from the owner or possessor of the premises.

Appellant offered to show, by testimony of witnesses who were the first to view the scene, that on the morning the three bodies were found three sets of human tracks were seen leading from deceased's automobile, across a lane, through the fence into the edge of the cotton field, up the edge of the field into the owner's barn, out of the barn and across the field to the place where the bodies were found; that an oil can, containing a mixture of gasoline and oil, was found near the bodies, and in the tenant's barn was an automobile, from which the plugs in its gasoline tank and crank case had been removed and were lying on the ground, and that all oil and gasoline had been taken. Thus relating in detail that to which there were no eyewitnesses—i. e., their purpose in going into the cotton field, and how they came in contact with the wire. This proffered testimony is in accordance with appellant's allegation, that the three men got out of the car together and went into the field to steal. This is a conflicting issue and pertinent to show the reason for deceased's unauthorized act; appellant's proffered testimony would refute the idea contained in the original opinion, that deceased's going upon said premises in answer to the distress calls of his companions "relieved him from the imputation of trespassing." Appellant was denied the right to prove these facts, which the writer thinks was error.

As tending to show how far the recognized principles of relevancy go, I quote the following expression of the Commission of Appeals, in Pounds v. Minter, 13 S.W.(2d) 351, 352, approved by our Supreme Court, i. e.: "In cases depending upon circumstantial evidence, the mind seeks to explore every possible source from which any light, however feeble, may be derived, and it is peculiarly proper that the jury should have before them every fact and circumstance, however slight, which may aid them in reaching a satisfactory conclusion. Greater latitude in the presentation of evidence must necessarily be allowed in cases of circumstantial than those of direct evidence. * * *"

The original opinion herein states that, "The evidence is not disputed that deceased entered the premises in response to a distress call from Bowen Daniels, his brother-in-law, which relieves him from any imputation of trespassing."

One who has occupied the position of a trial judge on a district bench, as has the writer, is not unadvised as to the probative force and effect such testimony would have on a controverted issue; the testimony of the deceased's wife, that her husband went to the cry of her brother in distress, calling "Doc," "Doc, hurry up," was most material to appellees' contention, and calculated to give to her husband a hero's wreath. Contra, the jury should have been allowed to hear appellant's said testimony, and their province was to accept or reject it. Under the trial court's ruling, they were compelled to accept the widow's testimony of the incident.

The deceased went upon the Carter farm solely for his own convenience, or the convenience of his companions, and for their benefit; he was charged with knowledge that the premises he was invading was the private

property of another. There is no evidence that he was following a path or roadway. Under the facts, there cannot be a serious claim, in my opinion, that the deceased was an invitee or licensee upon the premises when he received his injuries. Deceased and his companions were strangers in the community; they were not acquainted with the premises they invaded. Conceding that there does "exist a communal custom authorizing or at least tolerating, without let or hindrance, the entry and passage of persons through and over the inclosed pasture and cultivated lands of any one," and that by force of it the status of deceased was that of a licensee, what duty did appellant fail to discharge? The Supreme Court, in Dobbins v. Missouri, K. & T. Ry. Co., 91 Tex. 60, 41 S. W. 62, 63, 38 L. R. A. 573, 66 Am. St. Rep. 856, answers the question thusly: "If there be no duty, the question of negligence is not reached, for negligence can in law only be predicated upon a failure to use the degree of care required of one by law in the discharge of a duty imposed thereby." A licensee, if deceased was such, took the premises as he found it, and no duty devolved upon the owner or possessor thereof, after knowledge or notice, except to exercise reasonable care to safeguard trespassers from a new or sudden change in the premises. 16 Tex. Jur. p. 237 et. seq.

Deceased invaded the inclosed cotton field at midnight, on a dark, rainy, and stormy night. Thus, could it have been reasonably anticipated by appellant that the sagging wires would imperil his safety? Could a reasonable and ordinarily prudent person have anticipated such an occurrence as disclosed from this record? The questions, in my opinion, suggest the answers. Especially is this true in the absence of knowledge by appellant of any changed condition. The electrical storm which precipitated the damage to the transmission line was local. The company had no knowledge of the electrical disturbance, and nothing is disclosed calling for the necessity of an inspection of the line to avert the death of deceased and his companions. The prevailing inclement weather rendered the roads in the vicinity almost impassable; conveyance was made on horseback. Could it be contended, under such circumstances, that appellant owed a public duty to inspect its line at such time? Would one be guilty of negligence in failing to make such inspection under the attendant circumstances? The questions, in my opinion, suggest uncontrovertible answers. There can be no negligence without a breach of duty; the existence of the duty and its measure depend, in most instances, upon the relation of the parties. What would constitute a breach of duty of a transmission electrical company to the owner of land across which the line passes would ordinarily be no breach of duty to a trespasser, or a licensee. The law's only standard for measuring human conduct, with a view to determining its legal propriety or freedom from culpability, is the course of action that consists with that which a reasonably prudent person would have taken under similar circumstances.

This brings me to a consideration of the findings recited in the original opinion, that one George Ferguson was appellant's agent, and through him appellant received notice of such impending danger in time to have forestalled any such catastrophe. The incidents in the trial complained of by appellant, by assignments and appropriate propositions, are, in the opinion of the writer, sufficient to reverse and remand this case, if, in fact, it should not have been reversed and rendered, for the reasons stated.

The record discloses that George Ferguson was a merchant at Bells. Some time before appellant's acquisition of the power line, Ferguson's father owned and operated a light plant, and George Ferguson worked for his father. Evidently he was familiar with electricity and the operation of electrical devices. Some testimony in the record is to the effect that, when anything went wrong in Bells, or at the substation, it was reported to George, and he would go down and "throw the switch." A Mr. Cobb testified that Ferguson said he got $1 for throwing the switch in times of trouble at Bells. With this indirect testimony as to agency, the court permitted, over appellant's objection, witnesses to testify that they notified Mr. Ferguson of the damage to the power line in question. If the testimony established Ferguson as appellant's agent, at most such agency would be limited to throwing the switch at Bells. There is no proof in the record that such act at Bells would release the electric current from the wires at the point of injury. A notice to such an agent is, in my opinion, no notice to the company.

The record further discloses that the electric plant at Whitewright furnished the current for the lines in question at the time of the accident, and that the managing officers and employees at that plant had no notice or knowledge of the condition of the lines. The authority of Ferguson was questioned, and, as said in McGregor v. Hudson (Tex. Civ. App.) 30 S. W. 489, quoting from Mecham on Agency: "The authority of an agent, where the question * * * is directly involved, can only be established by tracing it to its source in some word or act of the alleged principal. * * * The authority of a private agent to represent his principal cannot be established by proof that he was generally reputed to be so authorized." Appellant objected to the notice given Ferguson, as bearing on notice to the corporation, which, in my opinion, should have been sustained.

Appellant further complains of the action of the court in including in its charge, over its

objection, special issue No. 9, which reads: "Was Doc Webster guilty of negligence in going into said field at the time and place in question in the manner that he did?"

It is evident that said issue embodies a general charge on contributory negligence of the deceased, in going into the place of danger. Appellant requested, in lieu thereof, issues segregating the separate and different ultimate facts of contributory negligence: (1) Special issue No. 4, as to the route chosen and followed by deceased and his companions; (2) special issue No. 7, as to the route chosen and followed by deceased; (3) special issue No. 9, as to deceased and companions going on the premises for an unlawful purpose; (4) special issue No. 10, as to deceased going on the premises for an unlawful purpose; (5) special issue No. 11, as to deceased going on the premises at that time of night; (6) special issue No. 12, as to deceased going on the premises at the place he entered; and (7) special issue No. 13, as to the route deceased took in going across the field; also the corollary questions as to the proximate cause of the death of the three men.

Ample evidence was offered to prove these various specific acts and omissions, and appellant's pleading would admit of the giving of the special requested charges. Appellant alleged: "Defendant further says that at the time Doc Franklin Webster sustained injury and immediately prior thereto, the said Bowen Daniels, Tommie Webster and Franklin Webster were each guilty of negligence which was the sole proximate cause of their several and collective injuries, but if not, were at least causes that caused or contributed to cause their injuries severally and collectively."

This allegation was not excepted to by appellee, and it may be regarded as tying into the further allegations of specific acts of deceased and his companions, viz.: That said Tommie Webster, Bowen Daniels, and Doc Franklin Webster, got out of said automobile, left the road, and undertook to cross a cultivated field over which it had its transmission line, in the nighttime, without the knowledge, consent, sanction, or invitation, either expressly or impliedly, from the owners of said premises, or any one in charge thereof, for their own purposes and conveniences, and, after accomplishing their purposes, and in returning to their automobile, they chose a route that was not used for a road or passageway, across an open field, and came in contact with the electric wire, and were killed, and on account of which the three were trespassers upon said premises, and that the light company was guilty of no negligence.

The writer is of the opinion that the pleading is sufficient to sustain the submission of appellant's requested issues, and the determinative authority, showing error in refusing to give them, is that of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, 521, rendered by this court, which holds: "The statutes make it the duty of the court in trials by jury: First, to submit all the controverted fact issues made by the pleadings; second, to submit each issue distinctly and separately, avoiding all intermingling; and, third, to give such explanation and definition of legal terms as shall be necessary to enable the jury to answer each issue."

From the above, it will be seen that the statutes require submission of each set of facts constituting negligence, and forbid the submission of contributory negligence in one general issue; and, from the facts of the present case, appellant was denied the right given it by statute. Appellant in due time pointed out such omissions and defects in the submission of the case, and should have been accorded such rights.

The majority has concluded that appellant's motion for rehearing should be overruled, and accordingly it is done. My interpretation of this entire record, as herein expressed, is that this case should have been reversed and rendered, and, so believing, I respectfully register my dissent.